THE STATE OF OHIO, APPELLEE, *v.* DALE, APPELLANT.

432

(No. 81AP-623—Decided
January 21, 1982.)

*Mr. Michael Miller,* prosecuting attorney, and *Ms. Karen L. Martin,* for appellee.

*Mr. James Kura,* county public defender, and *Mr. W. Curtis Stitt,* for appellant.

NORRIS, J. Defendant-appellant, Rickey L. Dale, appeals from his conviction for robbery following a trial by jury in the Common Pleas Court of Franklin County. The appeal presents the issue, under what circumstances a trial court is required to instruct a jury on the potential unreliability of eyewitness testimony.

Mary Schlueb, a high school student, testified that, at approximately 3:30 p.m., on January 23, 1981, after having departed the bus on her way home from school, she noticed a man was following about ten to fifteen feet behind her; that, when he continued to follow her when she crossed the street, she became scared and began to run; that the man also ran; that, when she slowed to a walk and looked around, he was only four or five feet behind her and she looked at him for about five seconds before he grabbed her around the neck and took her purse and ran off; that she then ran home where she was later picked up by police officers and driven to the curb near a multiple-family dwelling, told that someone would be coming out on the porch, and asked if she would be willing to see if she could identify him; that the porch was at least fifty feet from the police cruiser, and, when the man came out, she told the police she did not think that he was the robber, but could not be sure; that she was nearsighted and was not wearing her glasses at the time since they were in her purse; that, while she could not clearly see the features of the man who was on the porch, she could clearly identify a person at a distance of eight to ten feet without her glasses; that, while she was being driven to police headquarters, she gave a description of the robber, and when they arrived she was given a notebook containing a number of photographs; that, while she was looking through the notebook, no one said anything to her, and when she had looked at all of the photographs and had told the officers that she did not recognize the robber from the photographs, she was given another photograph and asked, "How about this one?"; that she immediately recognized the person in the photograph as the one who had robbed her, and was positive of her identification; that she signed the back of the photograph and wrote down the date and time of her identification (January 23, 1981 at 5:10 p.m.); that the lighting conditions at the police station were good; that after she identified the photograph a police officer said it was of the same man whom she had been unable to identify on the porch; that the man who robbed her was wearing light blue jeans and a faded blue jean jacket, and she vaguely remembered he was wearing a hat; and that she had never seen defendant prior to January 23. She identified defendant at trial as the person who took her purse.

A detective with the Columbus Police Department robbery squad testified that he had given the notebook of photographs to Miss Schlueb; that he had assembled in the notebook photographs of approximately seventy persons whom he considered potential suspects in purse snatchings in that area of town; that he and two other police officers were in the room while Miss Schlueb went through the notebook but they were all some distance from her during the ten minutes she looked through the notebook; that no one spoke to her during that time and she did not ask any questions or point out any

photographs from the notebook; that, while she was looking through the notebook, a police officer brought him a photograph of defendant and that, when she was looking at the last few photographs in the notebook, he placed the photograph of defendant in front of her and stepped back without saying anything; that, when she finished with the notebook, Miss Schlueb looked at the single photograph and said it was of the man who robbed her; that she told him that the only difference she noted between her recollection of the robber and the man in the photograph was that the robber's hair was shorter; that the photograph of defendant had been taken on July 22, 1980; that she repeated to him three times that the man in the photograph was the robber; and that, when he asked Miss Schlueb why she had been unable to identify defendant on the porch, she told him she had not been able to see the man because she did not have her glasses on. He also said the notebook contained a photograph of Willie Broomfield.

Other police officers testified that two men had stopped a cruiser and said that they had witnessed a robbery and led police to the multiple-family dwelling; that the men described two thieves — one wearing blue jeans and a blue jacket, and the other wearing a red leather jacket; that, when police officers saw defendant at the multiple-family dwelling, he was wearing dark blue jeans and a dark blue golf-style jacket; and that he walked out on the porch with police officers, but refused to go down from the porch and move closer to the cruiser in which Miss Schlueb was a passenger.

Dwayne Jenkins testified for the defense that he was one of the two men who had stopped the police cruiser; that defendant was not the robber — that Willie Broomfield was; that Willie Broomfield had shot him a year and one-half earlier; and that he told the officers in the cruiser that the purse snatcher was wearing blue jeans and a red shirt, and that

another man involved with the theft was wearing brown pants and a brown top.

Bernard Smith also said that he helped flag down the cruiser, and that, while he did not know who the robber was, defendant was not the robber; and that the robber was wearing a blue jean hat, a denim jacket, and jeans.

Defendant did not testify.

Prior to trial, the trial court had overruled a defense motion to suppress Miss Schlueb's identification of defendant. At trial, defense counsel requested special cautionary instructions concerning the potential unreliability of eyewitness testimony, which was rejected by the trial court.

Defendant raises one assignment of error:

"An accused's Fourteenth Amendment right to due process of law is violated where the trial court refuses to instruct the jury pursuant to a request for special jury instruction where the requested instruction is appropriate and necessary and where the substance of the requested instruction is not included in the general charge."

While the circumstances surrounding Miss Schlueb's identification were such that her testimony identifying defendant as the perpetrator of the crime was sufficiently reliable as a matter of law to support its admission into evidence, the weight to be given her testimony was for the jury — in that sense it was for the jury to decide whether or not it believed her identification was "reliable" from a factual standpoint. Whether or not the jury was properly instructed concerning its function in this regard is the subject of appellant's assignment of error.

A difficult question for resolution is presented by defendant's assignment of error where he argues that the refusal of the trial court to instruct the jury on the potential unreliability of eyewitness testimony, pursuant to his request for a special instruction, was prejudicial error.

The requested instruction would have

advised the jury that identification of defendant as the perpetrator of the crime was one of the important issues in the case, and, that it should consider the capacity and opportunity of the witnesses to observe defendant, whether the identification was the product of the witnesses' own recollections given the strength of the identification and the circumstances under which it was made, and any occasions when witnesses failed to identify defendant or had made an identification which was inconsistent with defendant's identification on other occasions. The requested instruction is an almost verbatim recital of the Model Special Instructions on Identification suggested by the United States Court of Appeals in *United States* v. *Telfaire* (C.A. D.C. 1972), 469 F.2d 552, at 558, and referred to with at least some degree of favor by our Supreme Court in *State* v. *Guster* (1981), 66 Ohio St. 2d 266, at 272-273 [20 O.O.3d 249].

We note at the outset that, contrary to the state's argument, the substance of the requested instruction was not covered by the trial court's general charge to the jury. The general charge included standard instructions to the effect that the jury must find that defendant was the person who committed the offense. While this instructed the jury to direct its attention to the identity of the accused as the perpetrator of the crime, it did not direct the jury's attention to the real objective of the requested instruction, *i.e.*, the potential unreliability of eyewitness testimony bearing on the issue of identity in this case, and of the inherent unreliability of eyewitness testimony in general. See *State* v. *Guster, supra,* at page 270.

In a criminal case, if requested special instructions are correct, pertinent, and timely presented, they must be included, at least in substance, in the general charge. *Cincinnati* v. *Epperson* (1969), 20 Ohio St. 2d 59 [49 O.O.2d 342], paragraph one of the syllabus. No contention is made by the state that the special instruction was not timely presented; neither does the state question the fact that it represented a correct statement of the law, with the exception of an obvious typographical error which would have been readily apparent to the trial court and the subject of immediate correction.

The question to be resolved then, is whether the requested special instruction was pertinent in this case. A trial court's instruction to the jury should be addressed to the actual issues in the case as posited by the evidence and the pleadings; abstract rules of law, even though correct, ought not be given unless specifically applicable to the facts in issue. Whether a cautionary instruction should be given will depend in large measure upon whether a resolution by the jury of the disputed issues in the case requires or will be clearly assisted by the instruction. *State* v. *Guster, supra,* at 271.

Upon a review of the evidence, we are compelled to conclude that the trial court abused its discretion in declining to include the requested instruction, or its substance, in its general charge. Many of the infirmities which are said to attach to eyewitness identification are present under the evidence in this case; there are numerous instances where eyewitness identification testimony is conflicting and confusing, indicating that it may have been unreliable. For example, one eyewitness said defendant was the perpetrator of the offense, while two said he was not; the opportunity of the eyewitnesses to observe the perpetrator of the crime was limited in time, and in some instances by distance; the testimony of the defense's two eyewitnesses concerning the apparel worn by the perpetrator was confusing and conflicting; one defense witness identified Willie Broomfield as the robber and said that he had known Broomfield prior to January 23; Willie Broomfield's photograph was in the notebook, but was passed over by Miss Schlueb; her capacity to observe the perpetrator may have been limited by poor eyesight; she was unable to identify defendant on one occasion, but was able

to do so on others; and her identification of the defendant's photograph may have been influenced by the circumstances of the identification procedure.

The confusion resulting from eyewitness testimony could not be resolved adequately only by instructing the jury that it was the judge of the credibility of witnesses; rather, in this case, it was necessary to specifically direct the jury's attention to the very nature of, and the potential problems of reliability inherent in, eyewitness testimony itself. Certainly the identification of defendant as the perpetrator of the crime was the central issue in the case. Accordingly, it is evident that a special cautionary instruction of the nature sought was especially appropriate and pertinent in the. present case and clearly would have assisted the jury in the determination of the central factual issue in the case, and that defendant's cause was prejudiced by the refusal of the trial court to give such an instruction.

In sustaining defendant's assignment of error, we at the same time add this *caveat:* we are not today holding that a verbatim recital of the *Telfaire* instruction is mandatory in every case in which a special cautionary instruction is required to be given concerning identification. While that instruction may be used nearly verbatim in appropriate cases to deal with the shortcomings of identification testimony, ordinarily it will serve only as a starting point from which the trial court may focus on the identification issue, with the substance of the entire instruction, or appropriate portions, revised and adapted as necessary to suit the evidence of the particular case, being included in the trial court's general charge.

Appellant's assignment of error is sustained, the judgment of the trial court is reversed, and this case is remanded to the trial court for a new trial.

*Judgment reversed and case remanded.*

WHITESIDE and MCCORMAC, JJ., concur.