[Cite as *State v. Collins*, 2014-Ohio-4224.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | Case No. 13CA27 |
| v. | : | |
| | : | <u>DECISION AND</u> |
| BRITTANY N. COLLINS, | : | <u>JUDGMENT ENTRY</u> |
| | : | |
| Defendant-Appellant. | : | Released: 09/23/2014 |

<u>APPEARANCES:</u>

Loribeth Kowalski, Circleville, Ohio for Appellant.

Judy C. Wolford, Pickaway County Prosecutor, Circleville, Ohio for Appellee.

Hoover, J.:

{¶ 1} Appellant Brittany N. Collins appeals her conviction and sentence from the Pickaway County Court of Common Pleas. A jury found Collins guilty of, among other things, two counts of Aggravated Robbery and one count of Complicity to Robbery. The trial court sentenced Collins to five years in prison on each count of Aggravated Robbery and twelve months for the count of Complicity. The trial court ordered the terms to be served consecutively for an aggregate term of ten years and twelve months in prison. Here on appeal, Collins argues that her constitutional right to due process was violated by improper eyewitness identification procedures. She also contends that the trial court failed to make the required findings to support the imposition of consecutive sentences. Lastly, Collins asserts that her defense counsel was ineffective for failing to object to these errors.

{¶ 2} In July 2012, a series of three robberies occurred in Pickaway County. The first took place at the 56 Mini Mart, where Miriam Brumfield was working. A female, wearing all

black clothing, a hat, and sunglasses entered the store and demanded money from Brumfield's cash drawer. Brumfield complied and handed over the money. The female then instructed Brumfield to go to the bathroom and count to 100.

{¶ 3} A second robbery occurred two days later at the Tarlton Market. A female again wearing all black clothing, a hat, and sunglasses entered the store. The female spoke to an employee at the store, Cody Smith. The female showed Smith a gun in her waistband and demanded money. Smith complied and handed the female the money from the cash drawer. The female again told Smith and another employee to go to the bathroom and lock the doors.

{¶ 4} Two days after the second robbery, Darci Leaker, an employee of 56 Mini Mart, observed a female enter the 56 Mini Mart wearing basketball shorts and a tank top. Leaker took notice of the female's numerous tattoos, her teeth, and her nails. Leaker described the female's nails as being chewed really short. Leaker saw the female exit the store and get into the passenger side of a silver four door Chevrolet Cobalt. Leaker noticed damage to the right side of the vehicle. Based on the surveillance video she viewed from the robbery, Leaker believed the female was the one who robbed the store four days earlier.

{¶ 5} Leaker called the sheriff's department, reported that the girl who robbed the store a few days earlier was there and just left in a Chevrolet Cobalt. Next, Leaker walked outside to smoke a cigarette when a man walked up to her and demanded she get off the phone and give him everything out of the cash drawer. After she complied, the man demanded she go into the bathroom. Leaker testified that the robbery took place within two minutes of the girl leaving.

{¶ 6} Detective John Strawser handled all three robbery investigations. After each robbery, he collected statements, evidence, and reviewed the stores' surveillance videos. Detective Strawser sent the best images from a surveillance video, showing the Cobalt and the

female, to Central Ohio Investigators Network (COIN). Detective Strawser identified similarities between the first two robberies such as the female suspect's clothes, hat, sunglasses, body type and how each of the employees were told to go to the bathroom. The department contacted local papers and crime stoppers, offering a $2,000 reward for information relating to the robberies. An anonymous tip led Detective Strawser to investigate the Facebook page of Brittany Guess, the appellant here, but listed with a different last name.

{¶ 7} Next, Detective Strawser, another detective, and members of the Sheriff's department traveled to an apartment complex, where they spoke to the complex's manager. Detective Strawser learned the address of Collins's father, Charles Guess. Upon arrival at the address, near Logan Ohio, they noticed appellant Brittany Collins getting out of a silver Chevrolet Cobalt, matching the vehicle in the images from the surveillance photos. Law enforcement advised Collins of her Miranda rights. Detective Strawser obtained signed waivers from Brittany Collins and an agreement to search without a warrant from her father Charles Guess.

{¶ 8} Detective Strawser took pictures of Collins, along with focused shots of her tattoos and teeth. The detectives also investigated a few hats given to them by Charles Guess. Detective Strawser photographed a hat that was later identified by eyewitnesses Brumfield and Smith as the hat worn by the perpetrator during the robberies. A few days later, an arrest warrant was issued for appellant Collins.

{¶ 9} At trial, the State presented the eyewitnesses from the first two robberies, Brumfield and Smith. During their testimonies, both witnesses provided a similar description of the robber and identified Collins as the perpetrator of the robberies. They were not shown or involved in any pretrial identification procedure such as a photo array or a traditional lineup.

Collins's trial counsel did not object to the in-court identifications or file a motion to suppress their testimony.

{¶ 10} After the trial concluded, the jury found Collins to be guilty of the following offenses: Count One, Aggravated Robbery, a first degree felony, in violation of R.C. 2911.01(A)(1); Count 2, Theft, a first degree misdemeanor, in violation of R.C. 2913.02(A)(4); Count 3, Aggravated Robbery, a first degree felony, in violation of R.C. 2911.01(A)(1); Count 4, Grand Theft, a third degree felony, in violation of R.C. 2913.02(A)(4); Count 5, Complicity to Robbery, a third degree felony, in violation of R.C. 2923.03(A)(2); Count 6, Complicity to Theft, a first degree misdemeanor in violation of R.C. 2923.03(A)(2). After merging Counts 2, 3, and 6, the trial court sentenced Collins to five years in prison for Counts 1and 2 and twelve months for Count 5. The court ordered the sentences to be served consecutively to one another for a total of ten years and twelve months. Collins then timely filed this appeal.

{¶ 11} We will address Collins's first and third assignments of error, before discussing Collins's second, fourth and fifth assignments of error, which all concern ineffective assistance of counsel arguments.

Appellant's First Assignment of Error:

> IN VIOLATION OF DUE PROCESS, MS. COLLINS WAS IDENTIFIED BY
>
> THE KEY EYEWITNESSES WHILE THE STATE WAS USING
>
> IDENTIFICATION PROCEDURES THAT WERE UNNECESSARILY
>
> SUGGESTIVE

{¶ 12} In her first assignment of error, Collins argues that the State's identification procedures involving witnesses Miriam Brumfield and Cody Smith were unnecessarily

suggestive. Collins argues that these eyewitness identifications deprived her of the constitutional right to due process of law; and thus her conviction must be reserved.

{¶ 13} Initially, we note that Collins failed to object to the identification testimony of either Brumfield or Smith. Collins also failed to file a motion to suppress the identification evidence. Thus, we can recognize the error only if it constitutes plain error. "To constitute plain error, a reviewing court must find (1) an error in the proceedings, (2) the error must be a plain, obvious or clear defect in the trial proceedings, and (3) the error must have affected 'substantial rights' (i.e., the trial court's error must have affected the trial's outcome)." *State v. Dickess*, 174 Ohio App.3d 658, 2008-Ohio-39, 884 N.E.2d 92, ¶ 31 (4th Dist.), citing *State v. Hill*, 92 Ohio St.3d 191, 749 N.E.2d 274 (2001), and *State v Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. "Furthermore, notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Id*., citing *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990), and *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "A reviewing court should notice plain error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*.

{¶ 14} Generally, a trial court must suppress a pretrial identification of a suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the circumstances. *State v. Waddy,* 63 Ohio St.3d 424, 438, 588 N.E.2d 819 (1992); *State v. Bell,* 1st Dist. Hamilton No. C030726, 2004-Ohio-3621, ¶ 16. Suggestive identification procedures are unreliable if they create a substantial likelihood of misidentification. *Waddy* at 439, 588 N.E.2d 819; *State v. Smith,* 1st Dist. Hamilton Nos. C–080712 and C–090505, 2009–Ohio–6932, ¶ 16. Ohio courts employ a two-part test to evaluate

the admissibility of an eyewitness identification. *State v. Gavin*, 197 Ohio App.3d 453, 462, 2011-Ohio-6617, 967 N.E.2d 1277 (4th Dist.). "[T]he first question is whether the identification procedure was unnecessarily suggestive." *State v. Mount*, 4th Dist. Ross No. 11CA3297, 2012-Ohio-4119, ¶ 7. "[I]f the procedure is deemed unnecessarily suggestive, the next question becomes whether the identification was unreliable under the totality of the circumstances, i.e. whether the suggestive procedure created a 'very substantial likelihood of misidentification.' " *Id.* quoting *Garvin* at ¶ 25, quoting *Waddy* at 439.

{¶ 15} The defendant bears the burden of proving both prongs of the test. *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *State v. Smith,* 1st Dist. Hamilton Nos. C080712 and C090505, 2009-Ohio-6932, ¶ 16. "The factors to consider in determining reliability include: '* * * (1) the witness's opportunity to view * * * the defendant during the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the suspect, (4) the witness's certainty, and (5) the time elapsed between the crime and the identification.' " *State v. Thompson*, 4th Dist. Vinton No. 12CA688, 2013-Ohio-2235, ¶ 14 quoting *Garvin* at ¶ 25; *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

{¶ 16} The State admits, and we agree, that the first prong of the test is met simply by the nature of the proceeding. An in-court identification typically occurs under circumstances which suggest the identity of the defendant. *State v. Monford*, 190 Ohio App.3d 35, 54, 940 N.E.2d 634 (10th Dist.2010). *See also State v. Mikolaj*, 7th Dist. Mahoning No. 05MA157, 2007-Ohio-1563, ¶ 13; *State v. Johnson,* 163 Ohio App.3d 132, 2005-Ohio-4243, 836 N.E.2d 1243, ¶ 55. In this case, there were no pretrial lineups or photo arrays. Brumfield first identified Collins as the offender at a pretrial hearing, and again during the actual trial. Smith identified Collins as the

perpetrator in court after viewing her picture in a local newspaper for being arrested and accused of committing the subject crimes. During direct examination of both witnesses, the State presented photo exhibits of the items recovered at Collins's residence, such as the hat, a picture depicting Collins's face and teeth, pictures of Collins's tattoos, and pictures from the stores' video surveillance.

{¶ 17} Brumfield described the perpetrator's appearance as a female with yellowed teeth and chewed fingernails wearing dark clothing, sunglasses, and a hat. Brumfield identified the hat and teeth, depicted in the State's photos of Collins, as belonging to the perpetrator she encountered during the robbery. Smith described the perpetrator as wearing all black clothing, a black hat with camouflage on it, and sunglasses. The State asked Smith if he could identify the person who robbed him that evening. Smith identified Collins as the perpetrator. Smith cited Collins's cheekbones, chin and skin tone as the attributes he recognized.

{¶ 18} Now we must determine the reliability of the two witness's identification to determine whether a substantial likelihood of misidentification existed. *Mount*, *supra*, at ¶ 7. The reliability of Brumfield's identification is evaluated by the aforementioned five factors. For the first factor, the witness's opportunity to view the defendant, the evidence demonstrates that Brumfield and the perpetrator had a face-to-face interaction, across the store's counter as the robbery transpired. Brumfield believed that Collins was in the store the day prior to the robbery. Brumfield testified that two of Collins's tattoos, depicted in State exhibits, matched tattoos she saw on a woman who was in the store a day earlier. Brumfield also explained that she recognized the robber's teeth from the person who was in the store a day before. Brumfield told Detective Strawser that the female she saw before had a flowered tattoo on her back and a tattoo on her forearm.

{¶ 19} For the second factor, the witness's degree of attention, Brumfield testified to the perpetrator's physical characteristics such as the female's build, her teeth, and her fingernails. Brumfield also described the perpetrator's clothing and identified the hat that was photographed at Collins's residence as the one worn by the robber. For the third factor, the accuracy of the description, captured images from the store's video surveillance were presented as evidence. The images show the perpetrator clothed in all black and wearing a hat similar to the one depicted in the State's exhibit.

{¶ 20} For the fourth factor, the witness's level of certainty, Brumfield maintained a strong conviction that Collins was the one who robbed the store. Lastly, we must consider the amount of time between the crime and the identification. This factor weighs more favorably for Collins since it was not until a pretrial hearing that Brumfield identified Collins as the offender. As mentioned numerous times before, no investigatory photo array or lineup took place.

{¶ 21} Given these facts, we conclude that Brumfield's identification was not unreliable under the totality of the circumstances; thus the procedure did not create a "substantial likelihood of misidentification." *Mount*, *supra*, at ¶ 7. Pursuant to our plain error standard of review, we do not find that Brumfield's identification affected the fairness, integrity, or public reputation of judicial proceedings. The trial court did not violate Collins's rights to due process when it allowed Brumfield to testify and identify her as the offender.

{¶ 22} We must also evaluate Cody Smith's identification of Collins as the robber of the store where he was working on July 24, 2012. Like the identification made by Brumfield, Smith did not pick Collins out of a photo array or lineup, but identified her at trial. Smith came forward to testify based largely upon his involvement with the robbery but also because he saw a photo of

Collins in a local newspaper after she had been arrested on suspicion that she committed the robbery.

{¶ 23} Smith described the woman who entered the store as: "dressed in all black, long sleeves, and has a hat on, it was black, it has some camo on it, and sunglasses, and its night time." Smith testified that he and the woman had a conversation that ended when she showed him a gun in her waistband, demanding the money from his register. Smith also testified that the person had her hair tucked under her hat but he could see some blonde hair poking out. Smith identified Collins as the person who robbed the store, stating that although the robber kept her sunglasses on the entire time, he recognized Collins's cheek bones, chin and skin tone.

{¶ 24} Like the identification by Brumfield, Smith's identification occurred under circumstances suggesting the identity of the offender. Therefore, the first prong of the identification admissibility test is met, as the identification was unnecessarily suggestive. By employing the five factors previously cited, we must determine the reliability under the totality of the circumstances of Smith's identification.

{¶ 25} First, Smith's interaction with the perpetrator was face to face, across the store's counter for approximately five minutes. Like Brumfield, Smith testified regarding the offender's clothing and the hat she wore during the robbery. Smith described the perpetrator as having her hair tucked under her hat, but "some blond was poking out from the hat." Defense counsel questioned Smith's description of her hair color, claiming Collins's hair is actually brown. Pictures of Collins, entered as exhibits, depicted her as a brunette. During his direct examination, Smith did not express any doubts in his identification of Collins. However, during cross examination, Collins's trial counsel asked Smith: "Would it be concerning because she [Collins]

doesn't have blond highlights?" Smith responded: "A little bit." Lastly, as with Brumfield's in-court identification, it came at a significantly later time after the crime was committed.

{¶ 26} Collins points out that Smith identified her only after seeing her picture in the local paper, after she was charged with the robberies. Smith admitted as much on cross-examination stating: "When I saw the picture in the Circleville Herald as the one being caught, I could tell it was her." However, if no state action was involved in the pretrial exposure to a newscast showing the defendant's picture, any suggestiveness goes to the weight and credibility of the witness's testimony, not to its admissibility, and is best addressed on cross examination. *State v. Fuller*, 7th Dist. Mahoing No. 12MA185 , 2014-Ohio-1351, ¶ 14; *State v. Ware,* 10th Dist. Franklin No. 00AP43, 2004-Ohio-6984, ¶ 55; *Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732, 940 N.E.2d 634 (10th Dist.) at ¶ 55.

{¶ 27} Here, Collins's trial counsel addressed the newspaper on cross-examination. Therefore, Collins's trial counsel was afforded the opportunity to impeach the credibility of Smith's identification in front of the jury. We again conclude that Smith's identification was not unreliable under the totality of the circumstances; thus the identification did not result in a "substantial likelihood of misidentification." *Mount*, *supra*, at ¶ 7. Since we have found no plain error in the identifications of Collins by Brumfield or Smith, we overrule Collin's first assignment of error.

Appellant's Third Assignment of Error

> THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES
>
> IN VIOLATION OF OHIO REVISED CODE 2929.14(C)(4) AND 2929.41(A),
>
> EFFECTIVE SEPTEMBER 30, 2011, WHICH REQUIRES JUDICIAL FACT
>
> FINDING TO ESTABLISH A FOUNDATION FOR A CONSECUTIVE

SENTENCE AND THUS TO PROVIDE APPELLATE REVIEW OF SAID

SENTENCE

{¶ 28} In her third assignment of error, Collins argues that the trial court failed to identify

the findings required in R.C. 2929.14(C), namely that consecutive sentences are not

disproportionate to the seriousness of the offender's conduct and that consecutive sentences are

not disproportionate to the danger the offender poses to the public.

{¶ 29} We review a felony sentence under the standard found in R.C. 2953.08(G)(2).

*State v. Bever*, 4th Dist. Washington No. 13CA21, 2014-Ohio-600, ¶ 13; *State v. Baker*, 4th Dist.

Athens No. 13CA18, 2014-Ohio-1967, ¶ 25. R.C. 2953.08(G)(2) provides two grounds for an

appellate court to overturn the imposition of consecutive sentences: (1) the appellate court, upon

its review, clearly and convincingly finds that "the record does not support the sentencing court's

findings" under R.C. 2929.14(C)(4); or (2) the sentence is otherwise clearly and convincingly

contrary to law. The appellate court's standard of review is not whether the sentencing court

abused its discretion. *See Bever* at ¶ 14; R.C. 2953.08(G)(2).

{¶ 30} R.C. 2929.14(C)(4) sets forth certain findings that a trial court must make prior to

imposing consecutive sentences. *Bever* at ¶ 15. *State v. Black,* 4th Dist. Ross No. 12CA3327,

2013-Ohio-2105, ¶¶ 56-57. That is, under Ohio law, unless the sentencing court makes the

required findings set forth in R.C. 2929.14(C)(4), there is a presumption that sentences are to run

concurrently. *Id.*

{¶ 31} Under R.C. 2929.14(C)(4), a sentencing court must engage in a three-step analysis

and make certain findings before imposing consecutive sentences. *Black* at ¶ 57; *State v. Clay,*

4th Dist. Lawrence No. 1 1CA23, 2013-Ohio-4649, ¶ 64; *State v. Howze,* 10th Dist. Franklin

Nos. 13AP386 & 13AP387, 2013-Ohio-4800, ¶ 18. Specifically, the sentencing court must find

that (1) "the consecutive service is necessary to protect the public from future crime or to punish

the offender"; (2) "consecutive sentences are not disproportionate to the seriousness of the

offender's conduct and to the danger the offender poses to the public"; and (3) one of the

following:

> (a) The offender committed one or more of the multiple offenses while the
>
> offender was awaiting trial or sentencing, was under a sanction imposed pursuant
>
> to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-
>
> release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more
>
> courses of conduct, and the harm caused by two or more of the multiple offenses
>
> so committed was so great or unusual that no single prison term for any of the
>
> offenses committed as part of any of the courses of conduct adequately reflects
>
> the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive
>
> sentences are necessary to protect the public from future crime by the offender.
>
> R.C. 2929.14(C)(4).

{¶ 32} The Supreme Court of Ohio recently settled the issue of when and where

the trial court must state the required findings in order to sentence an offender to

consecutive sentences:

> When imposing consecutive sentences, a trial court must state the required
>
> findings as part of the sentencing hearing, and by doing so it affords notice to the
>
> offender and to defense counsel. *See* Crim.R. 32(A)(4). And because a court
>
> speaks through it journal, *State v. Brooks*, 113 Ohio St.3d 199, 2007-Ohio-1533,

863 N.E.2d 1024, ¶ 47, the court should also incorporate its statutory findings in

the sentencing entry.

*State v. Bonnell*, Slip Opinion, No. 2014-Ohio-3177, ¶ 29.

While the sentencing court is required to make these findings, it is not required to give reasons

explaining the findings. *Id*. at ¶ 27; *Howze* at ¶ 18; *State v. Stamper,* 12th Dist. Butler No.

CA201208166, 2013-Ohio-5669, ¶ 23. Furthermore, the sentencing court is not required to recite

"a word-for-word recitation of the language of the statute." *Bonnell* at 29. "[A]s long as the

reviewing court can discern that the trial court engaged in the correct analysis and can determine

that the record contains evidence to support the findings, consecutive sentences should be

upheld." *Id.* A failure to make the findings required by R.C. 2929.14(C)(4) renders a consecutive

sentence contrary to law. *Bonnell* at ¶ 34; *Stamper* at ¶ 23; *State v. Nia,* 8th Dist. Cuyahoga No.

99387, 2013–Ohio–5424, ¶ 22. The findings required by the statute must be separate and distinct

findings; in addition to any findings relating to the purposes and goals of criminal sentencing.

*Nia* at ¶ 22.

{¶ 33} Here the trial court made the following statements at the sentencing hearing:

THE COURT: THE COURT MAKES A FINDING THAT BASED ON THE

CONDUCT OF THE DEFENDANT AND THE SERIOUSNESS OF THESE

OFFENSES, ARE CONSECUTIVE SENTENCES, AND IS NECESSARY TO

PROTECT THE PUBLIC FROM FUTURE CRIME AND TO ADEQUATELY

PUNISH THE OFFENDER, MISS COLLINS.

THE COURT ALSO FINDS THAT AT LEAST TWO OF THE MULTIPLE

OFFENSES WERE COMMITTED AS PART OF ONE OR MORE COURSES

OF CONDUCT AND THE HARM CAUSED BY TWO OR MORE OF

MULTIPLE OFFENSES SO COMMITTED WAS SO GREAT OR UNUSUAL

THAT NO SINGLE PRISON TERM FOR ANY OF THE OFFENSES

COMMITTED AS PART OF ANY OF THE COURSE OF CONDUCT

ADEQUATELY REFLECTS THE SERIOUSNESS OF THE OFFENDER'S

CONDUCT.

It is clear from these statements that the court made two of the three required findings. In the first paragraph of the above-cited text, the court found "the consecutive service is necessary to protect the public from future crime or to punish the offender." The court also included, verbatim, one of the three findings (great or unusual harm) from R.C. 2929.14(C)(4)(a)-(c).

{¶ 34} However, the court does not recite verbatim the finding that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." In the first sentence of the above-cited text, the court references the defendant's conduct and the seriousness of the offenses, but there is no finding that the issuance of consecutive sentences is not disproportionate considering those two details. It appears the trial court may have incorrectly spoke or some confusion arose considering the language of the first paragraph.

{¶ 35} We are aware that the law does not require the trial court to have a "word-for-word recitation of the language of the statute," but there still remains an omission of a finding based upon the sentence and its disproportionality with the defendant's conduct and the danger the defendant poses to the public. *Bonnell*, *supra* at ¶ 29. Also, we are aware that the trial court's Entry of Sentence, time stamped November 6, 2013, adequately expresses all the correct and necessary findings for the imposition to consecutive sentences.

{¶ 36} However, the trial court must make the findings mandated by R.C. 2929.14(C)(4)

at the sentencing hearing and also incorporate those findings in its sentencing entry. *Bonnell*,

2014-Ohio-3177 at ¶ 29. Here, we cannot discern from the sentencing hearing transcript that the

trial court addressed the proportionality of consecutive sentences to the seriousness of Collins's

conduct and the danger she posed to the public. *See Bonnell* at ¶ 33. Accordingly, we must

sustain Collins's third assignment of error and remand this case to the trial court so it can make

the necessary findings to impose consecutive sentences.

Appellant's Second Assignment of Error:

> TRIAL COUNSEL PROVIDED CONSTITUTIONALLY INEFFECTIVE
>
> ASSISTANCE WHEN HE FAILED TO OBJECT TO THE EYEWITNESS
>
> IDENTIFICATIONS OR REQUEST JURY INSTRUCTION CONCERNING
>
> THE UNRELIABILITY OF IDENTIFICATIONS.

Appellant's Fourth Assignment of Error:

> TRIAL COUNSEL PROVIDED CONSTITUTIONALLY INEFFECTIVE
>
> ASSISTANCE WHEN HE FAILED TO OBJECT TO THE TRIAL COURT'S
>
> ERRONEOUS IMPOSITION OF CONSECUTIVE SENTENCES.

Appellant's Fifth Assignment of Error:

> THE CUMULATIVE EFFECT OF THE ERRORS MADE BY TRIAL
>
> COUNSEL DENIED MS. COLLINS HER CONSTITUTIONAL RIGHT TO
>
> THE EFFECTIVE ASSISTANCE OF COUNSEL AND A FAIR TRIAL.

{¶ 37} We will address Collins's ineffective assistances assignments of error one at a

time. To establish constitutionally ineffective assistance of counsel, a defendant must show (1)

that his counsel's performance was deficient, and (2) that the deficient performance prejudiced

the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104

S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001);

*State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient

performance, the defendant must prove that counsel's performance fell below an objective level

of reasonable representation. To show prejudice, the defendant must show a reasonable

probability that, but for counsel's errors, the result of the proceeding would have been different."

(Citations omitted.) *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶

95. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No.

06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not

analyze both. *See Madrigal*, 87 Ohio St.3d at 389, 721 N.E.2d 52 (stating that a defendant's

failure to satisfy one of the elements "negates a court's need to consider the other."). In Ohio,

there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio

St.3d 279, 289, 714 N.E.2d 905 (1999).

{¶ 38} In her first assignment of error, Collins argues that her trial counsel failed to

object to the eyewitness identification or request special jury instructions concerning eyewitness

reliability. Collins contends these errors constituted ineffective assistance of counsel.

{¶ 39} First, in our discussion regarding Collins's first assignment of error, we

determined that the in-court identifications were not unreliable as to result in a substantial

likelihood of misidentification. Therefore, Collins cannot prove that if her trial counsel had

objected to the identifications, the outcome would have been different. This argument then fails

under the second prong of the *Strickland* test. We are aware that the "clearly would have been

different" language used in plain error analysis establishes a slightly greater burden than the

"reasonable probability" language used in evaluating ineffective assistance claims. Nonetheless,

we conclude that Collins has still failed to prove the outcome would have been different.

{¶ 40} Second, Collins argues that her trial counsel should have requested a special jury instruction regarding the unreliability of eyewitnesses. Collins specifically cites to the decision of *United States v. Telfaire*, 469 F.2d 552, 558-559, (D.C.Cir.1972). The *Telfaire* instruction instructs the jury to consider, inter alia, "the capacity and opportunity of the witness to observe the defendant; the identification being or not being the product of the witness's own recollection, given the strength of the identification and the circumstances under which it was made; the inconsistent identifications that may have been made by the witness; and the general credibility of the witness. *State v. Witherspoon*, 8th Dist. Cuyahoga No. 94475, 2011-Ohio-704, ¶ 23 citing *State v. Guster*, 66 Ohio St.2d 266, 268, 421 N.E.2d 157, fn. 1 (1981).

{¶ 41} According to the Supreme Court of Ohio, the legal standard for the inclusion of the instruction is as follows:

> The determination of whether a cautionary instruction of the type in question should be given will, therefore, depend in large measure on whether a resolution by the jury of the disputed issues in the case requires or will be clearly assisted by the instruction. It is obvious that such determination cannot be directed by a general rule, but must be decided upon the particular facts of the case by the exercise of sound discretion.

*Guster* at 271.

{¶ 42} Here, the trial court did give a general instruction regarding the credibility of witnesses, specifically stating:

> TO DETERMINE THE CREDIBILITY OF WITNESSES, YOU WILL APPLY THE TESTS OF TRUTHFULNESS THAT YOU ARE ACCUSTOMED TO APPLY IN YOUR DAILY LIVES.

YOU MAY CONSIDER THE APPEARANCE OF THE WITNESSES UPON

THE STAND; THE MANNER OF TESTIFYING; THE REASONABLENESS

OF THE TESTIMONY; THE OPPORTUNITY EACH WITNESS HAD TO SEE,

HEAR, AND KNOW THE THINGS CONCERNING WHICH HE OR SHE

TESTIFIED; ACCURACY OF MEMORY; FRANKNESS OR LACK OF IT;

INTELLIGENCE, INTEREST, AND BIAS, IF ANY; TOGETHER WITH ALL

THE FACTS AND CIRCUMSTANCES SURROUNDING THE TESTIMONY.

APPLYING THESE TESTS, YOU WILL ASSIGN TO EACH WITNESS SUCH

WEIGHT AS YOU DEEM PROPER

{¶ 43} Once again referring back to our discussion regarding the testimony of Brumfield and Smith, we did not find the in-court identifications unreliable. The facts here do not demonstrate a level of confusing or conflicting eyewitness statements leading a court to decide that the special instruction should have been given. *See e.g. State v. Dale*, 3 Ohio App.3d 431, 434, 445 N.E.2d 1137 (1982). The jury instruction as given did inform the jury how to evaluate witness credibility. We do not find that the facts of this case presented a situation where the special instruction would have resulted in a different outcome to the case's disposition. Therefore, we cannot find that Collins's trial counsel was ineffective in failing to request the special instruction. We overrule Collins's second assignment of error.

{¶ 44} In her fourth assignment of error, Collins argues that her trial counsel was ineffective when he failed to timely object to the trial court's erroneous imposition of consecutive sentences. However, due to our decision regarding Collins's third assignment of error that she is entitled to a new sentencing hearing, we find this assignment of error to be rendered moot. It is therefore overruled. *See* App.R. 12(A)(1)(c); *State v. Panning*, 3rd Dist. Van

Wert No. 151307, 2014-Ohio-1880, ¶ 18; *State v. Clay*, 12th Dist. Madison No. CA201112016, 2012-Ohio-5011, ¶ 31.

{¶ 45} In her fifth assignment of error, Collins argues that the cumulative effect of her trial counsel's errors resulted in the denial of the constitutional right to effective assistance of counsel. "Before we consider whether 'cumulative errors' are present, we must first find that the trial court committed multiple errors." *State v. Wharton,* 4th Dist. Ross No. 09CA3132, 2010 Ohio–4775, at ¶ 46, citing *State v. Harrington,* 4th Dist. Scioto No. 05CA3038, 2006-Ohio-4388, at ¶ 57, citing *State v. Goff,* 82 Ohio St.3d 123, 140, 694 N.E.2d 916 (1998).

{¶ 46} Collins contends that the result of counsel's failures to object to the identification procedures, the failure to request the special jury instructions and the failure to object to the imposition of consecutive sentences resulted in an unfair trial and sentence. However, as previously discussed we do not find that defense counsel's failure to object to the identification procedures or the failure to request the special jury instructions resulted in ineffective assistance of counsel. The failure to object to Collins's sentencing is a moot issue, now that this case will be remanded for resentencing. Therefore, we cannot find that the cumulative error doctrine applies here. Accordingly, Collins's fifth assignment of error is overruled.

{¶ 47} In conclusion, we overrule Collins's first, second, fourth and fifth assignments of error. We sustain Collins's third assignment of error, reverse the sentence and remand this cause to the trial court for resentencing.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND THE CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED. Appellee shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J.: Concurs in Judgment and Opinion.
McFarland, J.: Concurs in Judgment Only as to Assignments of Error I, II, IV, and V and Dissents as to Assignment of Error III.

For the Court

By:_____
        Marie Hoover, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.