[Cite as *State v. Garrett*, 2017-Ohio-8492.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

STATE OF OHIO                                    :
                                                 :
         Plaintiff-Appellee                      :      C.A. CASE NO.   27264
                                                 :
v.                                               :      T.C. NO. 15-CR-01836/1
                                                 :
DEVIN W. GARRETT                                 :      (Criminal Appeal from
                                                 :       Common Pleas Court)
         Defendant-Appellant                     :
                                                 :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the 9th day of November, 2017.

· · · · · · · · · ·

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
         Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. No. 0072135, 36 N. Detroit Street, Suite 102, Xenia, Ohio 45385
         Attorney for Defendant-Appellant

· · · · · · · · · · · ·

DONOVAN, J.

{¶ 1} Defendant-appellant Devin W. Garrett appeals his conviction and sentence for one count of aggravated robbery (deadly weapon), in violation of R.C. 2911.01(A)(1), a felony of the first degree; one count of felonious assault (deadly weapon), in violation of R.C. 2903.11(A)(2), a felony of the second degree; and one count of kidnapping (felony or flight), in violation of R.C. 2905.01(A)(2), a felony of the first degree.   Each of the three

counts was accompanied by a mandatory three-year firearm specification. Garrett filed a timely notice of appeal with this Court on September 13, 2016.

{¶ 2} The incident which forms the basis for the instant appeal occurred during the early morning hours of April 12, 2015, when the victim, Danny Courts, was moving items from his residence located on Harvard Boulevard in Dayton, Ohio. At approximately 1:50 a.m., Courts was loading items into his vehicle, a black Pontiac Grand Prix. He observed two men running around the left side of his house and another man running down the street from his right side. All of the men were running towards Courts, and each man was carrying a gun. One of the men yelled "Get him!" and ordered Courts to get in his car. Courts testified that rather than get into his car, he ran down the street toward his neighbors' houses. Two of the men ran after Courts.

{¶ 3} In an effort to elude the men chasing him, Courts ran to his neighbor's house located at 1313 Harvard Boulevard and tried to force his way in the front door. Courts was unable to gain entrance to the house, and the two men were able to overtake him. The two men seized Courts and dragged him off the porch, shouting "Come on. Give it to me." Once they were back in the street, the two men began pistol-whipping Courts and kicking him in the head. While Courts was being beaten, one of his assailant's hood came off of his head. Courts testified that he immediately recognized the man as an individual from around the neighborhood whose nickname was "Nuke." "Nuke" was later identified as the defendant-appellant, Garrett. Upon being recognized, Garrett ordered the other assailant to "Kill him [Courts]." At that point, Courts was able to slip out of his "hoodie" and get away from Garrett and the other man. In the process of running away,

Courts lost his "hoodie" and shoe.[1]   Courts ran to another neighbor's house located at 1317 Harvard Boulevard and began pounding on the door asking to be let inside.

{¶ 4} Simultaneously, the third assailant who was now driving Courts' vehicle crashed it into a truck that was parked on the street.   The third assailant exited the vehicle and fled.   Garrett and the other man who had been chasing Courts meanwhile stood in the street.   Courts testified that one of the men also fired his gun several times.   Courts laid down on the front porch of the house behind the screen door and pretended to be dead.   Thereafter, a white SUV appeared at the corner of Harvard Boulevard and Princeton Drive.   Garrett and the other man ran to the vehicle, and both got in the backseat.   The SUV was then driven from the scene.   After the assailants left, Courts got up and ran, stopped a few blocks away, and hid behind a fence.   Courts testified that he eventually observed a police cruiser pass by, and he flagged the officer down.

{¶ 5} At trial, the State presented the testimony of Katisha Postell, one of Courts' neighbors who lived at 1313 Harvard Boulevard on the date of the incident.   Postell testified that she awoke to a loud crashing sound.   Postell further testified that when she went to her window to investigate, she observed two men running backwards down the street firing multiple gunshots into the air.   Postell also observed that someone had crashed a car into her neighbor's truck.   Postell testified that she watched the two men run towards the corner of Harvard Boulevard and Princeton Drive, but she lost sight of them and could not see where they went.   Postell was unable to identify either of the individuals that she observed.

---

[1] Police later recovered Courts' "hoodie" and shoe near 1313 Harvard Boulevard and returned the items to him.

**{¶ 6}** The State also presented the testimony of Linda Jones, who lived at 1304 Harvard Boulevard on the night Courts was attacked. Jones testified that she awoke to the sound of gunfire and immediately called 911. While she spoke to the 911 operator, Jones looked out of her window and observed a white SUV parked near the corner of Harvard Boulevard and Princeton Street. Jones testified that she then observed two men run by her house, get into the white SUV, and drive away. Jones testified that moments later, she observed the same white SUV return and pull into an alleyway behind her house. Once the SUV stopped, Jones observed one of the men that she had initially seen running down the street get out of the vehicle. The man ran out of Jones' line of sight but then ran back to the SUV and left again. Jones testified that she called 911 again and reported the new details.

**{¶ 7}** Jones' husband, Jeffrey, also awoke to the sounds of gunfire. Jeffrey testified that he observed two men run down the street in front of his house and get into the backseat of a white SUV and drive away. After the SUV left the scene, Jeffrey went outside to investigate the damage from the car wreck. Jeffrey testified that he observed that a black car had crashed into his neighbor's truck. Jeffrey observed that the black car was sitting unoccupied in the middle of the street still running. Jeffrey testified that when he saw the white SUV return, he ran back inside his house.

**{¶ 8}** Cal and Tasha Foster both testified at Garrett's trial. At the time that Courts was attacked, the Fosters were living at a residence located at 1317 Harvard Boulevard. As previously stated, Courts ran to the Fosters' house after he was able to escape from being beaten by Garrett and the other assailant. Courts also pretended to be dead on the Fosters' porch. Both Cal and Tasha testified that they awoke to the sound of gunfire.

The Fosters also testified that they observed that a black Pontiac had collided with Cal's truck. Tasha testified that she heard a loud noise and thought that something had rammed into her front door. Tasha further testified that when she looked at her front door the next day, she noticed that it had been damaged. Cal testified that he found a bullet casing in front of his house. Cal also found a small hole in the front of his house that he believed was a bullet hole.

{¶ 9} Courts was not immediately able to identify the man he recognized as "Nuke" as Garrett to the police. However, after searching a local news website that contained jail book-in photos, he was able to identify Garrett as one of the men who attacked him. Shortly thereafter, Courts testified that as he was watching the news on television, he saw a story involving another robbery and recognized the two suspects who had been arrested as the other two men who attempted to rob and kidnap him, to wit: Londell Johnson and Davion McCombs. The news story also contained video footage which enabled Courts to identify the white SUV that Johnson was driving at the time of the arrest as the same SUV in which Garrett and McCombs fled from the scene of Courts' attack on April 12, 2015. Thereafter, Courts met with Detective Doug Baker of the Dayton Police Department. Courts informed Detective Baker of the information he had learned regarding his assailants' true identities. Detective Baker testified that he was able to confirm that Johnson drove the white SUV used in the attack on Courts. Moreover, prior to Garrett's trial, McComb and Johnson pled guilty in separate cases to their involvement in Courts' kidnapping, aggravated robbery, and felonious assault which occurred on April 12, 2015.

{¶ 10} On November 3, 2015, Garrett was indicted for aggravated robbery (deadly

weapon), felonious assault (deadly weapon), and kidnapping (felony or flight). As previously noted, each of the counts was accompanied by a firearm specification. At his arraignment on November 17, 2015, Garrett pled not guilty to the charged offenses.

**{¶ 11}** Garrett's jury trial began on March 7, 2016, and ended on March 10, 2016. The jury found Garrett guilty on all counts and specifications contained in the indictment. At disposition on March 23, 2016, the trial court merged the kidnapping count with the count for aggravated robbery and imposed an aggregate sentence of nine years in prison which included the felonious assault and firearm specifications. Due to procedural errors at his original sentencing hearing and irrelevant to this appeal, Garrett was resentenced on August 17, 2016. The trial court imposed the original aggregate prison term of nine years, broken down as follows: three years in prison for the aggravated robbery to run concurrent to two years for the felonious assault, consecutive to six years in prison for the firearm specifications.

**{¶ 12}** It is from this judgment that Garrett now appeals.

**{¶ 13}** Garrett's first assignment of error is as follows:

**{¶ 14}** "THE TRIAL COURT ERRED AND COUNSEL WAS INEFFECTIVE REGARDING THE JURY INSTRUCTIONS GIVEN TO THE JURY."

**{¶ 15}** In his assignment, Garret contends that the trial court erred when it failed to properly instruct the jury on the issue of eyewitness identification pursuant to *United States v. Telfaire,* 469 F.2d 552, 558–59 (D.C.Cir.1972). Furthermore, Garrett argues that his trial counsel was ineffective for failing to request that the *Telfaire* instruction be given in place of the standard jury instruction regarding the credibility of identification testimony.

{¶ 16} Initially, we note that Garrett failed to object to the trial court's failure to give the *Telfaire* instruction to the jury, so all but plain error has been forfeited. *State v. Lott,* 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990).

{¶ 17} For plain error to exist, the defect in the trial proceedings must be obvious and must have affected the outcome of the trial. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16. "Notice of plain error 'is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 18} The decision of whether to give a *Telfaire* instruction is a matter within the sound discretion of the trial court that depends "in large measure on whether a resolution by the jury of the disputed issues in the case requires or will be clearly assisted by the instruction." *State v. Guster,* 66 Ohio St.2d 266, 271, 421 N.E.2d 157 (1981); *State v. Blackburn,* 2d Dist. Greene No. 97 CA 100, 1998 WL 543336 (Aug. 28, 1998). The Ohio Supreme Court has held:

> A trial court is not required in all criminal cases to give a jury instruction on eyewitness identification where the identification of the defendant is the crucial issue in the case and is uncorroborated by other evidence. A trial court does not abuse its discretion in deciding that the factual issues do not require, and will not be assisted by, the requested instructions, and that the issue of determining identity beyond a reasonable doubt is adequately covered by other instructions.

*Guster, supra*, at syllabus.

**{¶ 19}** In *State v. Dale*, 3 Ohio App.3d 431, 434, 445 N.E.2d 1137 (10th Dist.1982), the appellate court concluded that the trial court had erred in failing to give a *Telfaire* instruction because "[m]any of the infirmities which are said to attach to eyewitness identification are present under the evidence of this case." The "infirmities" included conflicting and confusing eyewitness testimony on the defendant's personal traits and apparel, circumstances limiting the eyewitnesses' observations of the defendant, one eyewitness's inability to identify the defendant during a photographic array, and improper influences upon the eyewitnesses during identification procedures. *Id.* at 434-435, 445 N.E.2d 1137.

**{¶ 20}** The trial court gave the following instruction with respect to witness testimony:

Also, as we discussed on Monday during jury selection, you are the judges of the facts, the credibility of the witnesses and the weight of the evidence. To weigh the evidence, you must consider the credibility of the witnesses. You will use the test of truthfulness that you use in your daily lives. These tests include the appearance of each witness up on the stand, the witness' manner of testifying, the reasonableness of the testimony, the opportunity the witness had to see, hear and know the things about which the witness testified, and the witness' accuracy and memory, frankness or lack of it, intelligence, interest and bias, if any together with all the facts and circumstances surrounding the testimony.

Use these tests and assign to each witness' testimony such weight,

such weight as you deem proper. You are not required to believe the testimony of any witness simply because the witness was under oath. You may believe or disbelieve all or any part of the testimony of any witness. Your duty is to decide what testimony to believe and what testimony not to believe. The testimony of one witness, if believed by you, is sufficient to prove any disputed fact.

Trial Trans. 291-292.

{¶ 21} In the instant case, the trial court instructed the jury on its role as the sole judge of the facts, witness credibility, and weight of the evidence and explained how to weigh the evidence and how to determine witness credibility, but it did not caution the jury on the potential unreliability of Courts' identification testimony. Nevertheless, Courts never wavered regarding his identification of Garrett as one of the three men who chased and attacked him in the early morning hours of April 12, 2015. Specifically, once Garrett's hood came off, Courts affirmatively identified him as "Nuke." Courts testified that he recognized "Nuke" as someone from his neighborhood. Courts also provided the police with an accurate description of Garrett's gender, race, build, and height. Moreover, once Garrett's hood came off, Courts had an opportunity to clearly observe his assailant's face. Simply because Courts was the only witness who could positively identify Garrett as one of the assailants, the trial court was not required to give the jury the *Telfaire* instruction.

{¶ 22} Upon review, we conclude that the trial court could have reasonably determined that the jury did not need a *Telfaire* instruction to resolve the factual issue of the identity of Courts' assailant. *Guster,* 66 Ohio St.2d at 271, 421 N.E.2d 157.

Furthermore, had the trial court given the *Telfaire* instruction, it is not clear that the outcome of the trial would have been otherwise. *Long,* 53 Ohio St.2d at 97, 372 N.E.2d 804. Thus, the trial court did not commit plain error in failing to *sua sponte* give a *Telfaire* instruction. *See State v. Coots,* 2015-Ohio-126, 27 N.E.3d 47, ¶ 64-64 (2d Dist.).

{¶ 23} Additionally, Garrett argues that his trial counsel was ineffective for failing to request that the *Telfaire* instruction be given to the jury. As the Supreme Court noted in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), "the proper standard for attorney performance is that of reasonably effective assistance. * * *." *Id.,* 687, 104 S.Ct. 2052. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. * * *." *Id.,* 691, 104 S.Ct. 2052. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. * * *." *Id.,* 693, 104 S.Ct. 2052. The *Strickland* Court further noted, "[o]n the other hand, we believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.,* 694, 104 S.Ct. 2052. Finally, the Court in *Strickland* determined that to establish ineffective assistance, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

{¶ 24} The facts here do not demonstrate a level of confusing or conflicting eyewitness statements leading a court to decide that the special instruction should have been given. *See Dale,* 3 Ohio App.3d at 434. The "infirmities" present in *Dale* are not present here. The jury instruction as given did inform the jury how to evaluate witness credibility. We do not find that the facts of this case presented a situation where the special instruction would have resulted in a different outcome to the case's disposition. Therefore, we cannot find that Garrett's trial counsel was ineffective in failing to request the special instruction.

{¶ 25} Garrett's first assignment of error is overruled.

{¶ 26} Garrett's second and final assignment is a follows:

{¶ 27} "THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 28} In his final assignment, Garrett argues that the jury's verdict finding him guilty of aggravated robbery, felonious assault, and kidnapping, is against the manifest weight of the evidence.

{¶ 29} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the

conviction." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 30} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley,* 2d Dist. Champaign No. 97–CA–03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 31} Upon review, we conclude that Garrett's convictions are not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony are matters for the jury to resolve. *State v. Benton,* 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, ¶ 7. Here the jury quite reasonably could have credited the extensive testimony provided by the State's witnesses, evaluated said evidence and all reasonable inferences to the elements of the offenses, and thereafter, found Garrett guilty. The jury did not lose its way simply because it chose to believe the eyewitness testimony of Courts who affirmatively identified Garrett as one of the men who chased, beat, and attempted to rob him in the early morning hours of April 12, 2015. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against conviction, or that a manifest miscarriage of justice has occurred.

{¶ 32} Garrett's second assignment of error is overruled.

{¶ 33} Both of Garrett's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies mailed to:

Andrew T. French
Jay A. Adams

Hon. Eric Blaine