OPINION
{¶ 1} Appellant, Anthony Jerome Smith, appeals the judgment entered by the Trumbull County Court of Common Pleas. Upon remand from this court, the trial court sentenced Smith to an aggregate prison term of 21 years for his convictions for aggravated robbery, with repeat violent offender and firearm specifications, and having a weapon while under disability. *Page 2 
 {¶ 2} On the evening of September 10, 2004, Officer Peter DeAngelo of the Liberty Township Police Department was working a DUI checkpoint. One of the vehicles that entered the checkpoint had North Carolina license plates and was driven by Lawrence Johnson. Johnson did not have a driver's license with him, and a subsequent computer check revealed his license was suspended. Smith was riding in the car driven by Johnson. Officer DeAngelo had a suspicion that Smith was under the influence of alcohol. Therefore, he did not permit either Smith or Johnson to drive the vehicle. Later, Smith returned with another individual, who possessed a valid driver's license, and Officer DeAngelo permitted the vehicle to be driven away.
 {¶ 3} On September 11, 2004, Gloria Alicea was working the cash register at a BP gas station in Liberty Township, Ohio. Approximately 1:15 a.m., two individuals entered the gas station, and one of them poured himself a cup of coffee. One of the individuals approached Alicea, pulled out a nine millimeter gun, and told Alicea to give him all the money. Alicea gave the individual $115. In court, Alicea identified this individual as Smith.
 {¶ 4} At the time of the robbery, Kenda Learn was working as a manager at the BP station. At trial, Learn described a surveillance videotape that was recorded during the robbery. She also identified Smith as the individual in the store that approached Alicea.
 {¶ 5} Officer DeAngelo was still working the DUI checkpoint when he heard the radio call about the robbery at the BP station. Officer DeAngelo responded towards the BP station; however, he took side streets. On Gypsy Lane, Officer DeAngelo noticed a car parked in the road, approximately 100 yards from the BP station. As he was *Page 3 
watching the vehicle, he observed a black male jump into the car through the rear window. By that time, Officer DeAngelo noticed the vehicle was the same vehicle with North Carolina plates that was stopped earlier at the checkpoint.
 {¶ 6} Officer DeAngelo began following the vehicle with North Carolina plates. In addition, Officer DeAngelo called over the police radio that he was pursuing the vehicle. A short time into the pursuit, the vehicle failed to negotiate a turn and crashed into a telephone pole in a residential neighborhood in Youngstown, Ohio. After the crash, the back-seat passenger looked directly at Officer DeAngelo. Then, he exited the vehicle and ignored Officer DeAngelo's commands. At that time, Officer DeAngelo noticed the individual was holding a black hat and a silver-colored handgun. At trial, Officer DeAngelo identified this individual as Smith. Officer DeAngelo arrested the driver of the vehicle.
 {¶ 7} Officer Michael Shuster of the Liberty Township Police Department also responded to the call of the robbery at the BP station. He joined the pursuit when the suspects' and Officer DeAngelo's vehicles passed him as they were traveling on Gypsy Lane. After the suspects' vehicle crashed, Officer Shuster pursued one of the passengers on foot through the backyards of private residences. Eventually, Officer Shuster found an individual lying in the grass. At trial, Officer Shuster identified this individual as Smith. When Officer Shuster discovered Smith, he also found a loaded firearm about two feet from Smith's legs. At trial, Alicea identified this gun as the gun Smith pointed at her during the robbery. In addition, Officer Shuster testified that $115 was found in Smith's back pocket. *Page 4 
 {¶ 8} After Smith was arrested, he was transported to the Liberty Police Station. Sergeant Toby Meloro of the Liberty Police Department asked Alicea and Learn to come to the station to identify two individuals. Alicea and Learn identified Smith and Johnson as the individuals who entered the BP station that day, and both of them indicated that Smith was the individual that approached Alicea and robbed her.
 {¶ 9} Smith was indicted with one count of aggravated robbery, in violation of R.C. 2911.01 (A)(1) and a first-degree felony. This charge contained two specifications, a firearm specification, pursuant to R.C. 2941.145, and a repeat violent offender specification, pursuant to R.C. 2941.149. In the same indictment, Smith was charged with one count of having a weapon while under disability, in violation of R.C. 2923.13(A)(2) and (B), a third-degree felony.
 {¶ 10} A jury trial was held, and Smith was convicted of aggravated robbery, with the repeat violent offender and gun specifications, and having a weapon while under disability. The trial court sentenced Smith to a ten-year prison sentence on the aggravated robbery conviction. Also, the trial court sentenced him to a three-year term on the firearm specification and a five-year term on the repeat violent offender specification. The terms imposed for the specifications were both ordered to be served consecutively to the underlying ten-year term, for a total sentence of 18 years on the aggravated robbery conviction. In addition, the trial court sentenced Smith to a three-year prison term for his having a weapon while under disability conviction, which was ordered to be served consecutively to the sentence imposed on the aggravated robbery conviction. Thus, Smith's aggregate prison term was 21 years. *Page 5 
 {¶ 11} Smith appealed his conviction to this court. In his first appeal, this court held that the trial court erred by failing to instruct the jury on the lesser-included offense of robbery. State v.Smith, 11th Dist. No. 2005-T-0080, 2006-Ohio-4669, at ¶ 40. This court reversed Smith's convictions and remanded the matter for a new trial. Id. at ¶ 44-45.
 {¶ 12} After this matter was remanded to the trial court, Attorney Michael Partlow entered a notice of appearance on behalf of Smith. Attorney Partlow represented Smith in his initial appeal to this court.
 {¶ 13} Attorney Partlow filed a request for discovery on behalf of Smith. Specifically, he requested the names of all the witnesses the state intended to call. Although there are no documents in the record to indicate, the prosecutor apparently informed Attorney Partlow that the witnesses would be the same as the first trial. Also, at trial, the parties agreed that the state provided a witness list to defense counsel prior to the first trial.
 {¶ 14} Smith filed a motion to suppress the identifications of himself by Learn and Alicea. Smith argued that the "show-up" procedure used by the police to obtain the initial identifications by Learn and Alicea was unduly suggestive. The state filed a memorandum in opposition to Smith's motion to suppress, in which the state asserted that the process used by the police was proper. The trial court held a hearing on Smith's motion to suppress. At the hearing, Learn, Alicea, and Sergeant Meloro testified. Following the hearing, the trial court held that there was no evidence to indicate that Learn's and Alicea's identifications of Smith were "unnecessarily or *Page 6 
impermissibly suggestive," and that the identifications were reliable. The trial court denied Smith's motion to suppress the witnesses' identifications.
 {¶ 15} Smith was retried before a jury. With the exception of Sergeant Meloro, all of the state's witnesses who testified at his second trial had testified at his initial trial. Unlike his initial trial, Smith did not testify on his own behalf in his second trial. The jury found Smith guilty of aggravated robbery, with repeat violent offender and firearm specifications, and having a weapon while under disability.
 {¶ 16} The trial court again sentenced Smith to a ten-year prison term for his conviction for aggravated robbery. In addition, the trial court sentenced Smith to a five-year prison term for his repeat violent offender specification and a three-year term for his firearm specification, both of which were ordered to be served consecutively to the underlying ten-year term. Finally, the trial court imposed a three-year prison sentence for Smith's conviction for having a weapon while under disability, also to be served consecutively to his aggravated robbery conviction. Smith's aggregate prison sentence is 21 years.
 {¶ 17} Smith has appealed the trial court's judgment entry following his retrial. Smith raises four assignments of error. His first assignment of error is:
 {¶ 18} "The trial court erred by denying appellant's motion to suppress."
 {¶ 19} "Appellate review of a motion to suppress presents a mixed question of law and fact." State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8. The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. Id., citing State v. Fanning (1982), 1 Ohio St.3d 19. Thereafter, the appellate court must independently determine whether those factual *Page 7 
findings meet the requisite legal standard. Id., citing State v.McNamara (1997), 124 Ohio App.3d 706.
 {¶ 20} Smith contends the initial identifications of himself by Learn and Alicea were unduly suggestive.
 {¶ 21} The Supreme Court of Ohio has held that if "`"a witness has been confronted with a suspect before trial, due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances."'" State v.Gross, 97 Ohio St.3d 121, 2002-Ohio-5524, at ¶ 19, quoting State v.Murphy (2001), 91 Ohio St.3d 516, 534, quoting State v. Waddy (1992),63 Ohio St.3d 424, 438. (Emphasis added by Murphy Court.)
 {¶ 22} In determining whether a pretrial identification is unreasonably suggestive as to create a likelihood of misidentification, the Supreme Court of Ohio has held that the following factors should be considered:
 {¶ 23} "(1) [T]he opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation."State v. Broom (1988), 40 Ohio St.3d 277, 284, citing Mason v.Brathwaite (1977), 432 U.S. 98, 114.
 {¶ 24} In this matter, we note that the identifications were achieved through a "show-up" process, where the suspects individually appeared before the witnesses. This "`"practice of showing suspects singly to persons for the purpose of identification, *Page 8 
and not as part of a lineup, has been widely condemned."'" State v.Gross, 97 Ohio St.3d 121, 2002-Ohio-5524, at ¶ 24. (Citations omitted.)
 {¶ 25} In the case sub judice, we disagree with the trial court's determination that the identifications were not unnecessarily suggestive. Presenting the suspects to the witnesses in an isolated manner was suggestive. Id. However, we must also determine whether the identifications were unreliable when viewed in the totality of the circumstances and if there was a likelihood of misidentification. Id. at ¶ 19 24. (Citations omitted.)
 {¶ 26} In applying the factors set forth above, we agree with the trial court that the identifications in this matter were reliable.
 {¶ 27} Learn and Alicea were both able to observe Smith during the commission of the crime. The trial court found that both individuals were certain about their identifications. Further, Learn and Alicea made the identifications within one hour of the crime being committed. These factors all weigh in favor of a finding that the identifications were reliable.
 {¶ 28} It is important to note that the police presented two individuals, Smith and Johnson, for Alicea and Learn to identify. At the suppression hearing, both Learn and Alicea testified that they identified Johnson during the show-up. However, they did not know he was involved in the robbery. Instead, they believed he was a customer present at the store. Between Smith and Johnson, both Learn and Alicea identified Smith as the person who committed the direct act of robbing Alicea at gunpoint. Thus, Learn and Alicea actually were presented with two different individuals and both positively identified Smith as the person who approached Alicea and robbed her. The fact that *Page 9 
Alicea and Learn identified both Smith and Johnson as the individuals who were in the store and distinguished them based on what each was doing during the robbery are additional factors pertaining to the reliability of their identifications.
 {¶ 29} Smith argues that the identifications were based, at least in part, on the clothing the suspects were wearing, including a hat. Again, the identifications were made less than one hour after the crimes were committed. Smith was seen diving into a car only 100 yards from the BP station within minutes of the crime being reported. There was no evidence presented that Smith or Johnson had an opportunity to change their attire between the time of the crime and the time of the identification. In addition, the fact that a suspect is wearing distinguishing clothing that the witnesses specifically remember from the crime when they are apprehended only minutes after the crime occurred does not make the identifications unreliable. If anything, it increases the reliability of the identifications.
 {¶ 30} Finally, we note that the robbery was recorded on videotape. The videotape and still images taken from it were admitted at trial. In addition, the booking photographs of Smith and Johnson were admitted. These photographic exhibits further support a finding that Alicea's and Learn's identifications of Smith and Johnson were reliable.
 {¶ 31} Smith's first assignment of error is without merit.
 {¶ 32} Smith's second assignment of error is:
 {¶ 33} "The trial court abused its discretion by failing to exclude the testimony of Detective Toby Meloro." *Page 10 
 {¶ 34} "The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 43, citing State v. Issa (2001), 93 Ohio St.3d 49, 64. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157. (Citations omitted.)
 {¶ 35} During the state's case-in-chief, the state called Sergeant Meloro as a witness. Sergeant Meloro did not testify at Smith's first trial. Soon after Sergeant Meloro began his testimony, the following colloquy occurred:
 {¶ 36} "MR. PARTLOW: Yes. I'd like to enter an objection to this witness testifying. The first I'm hearing of this is today. There was no real discovery here. I submitted discovery requests and I was just told that all the witnesses would be the same and all the exhibits would be the same, with the exception of some pictures which were presented today and I was provided with before this trial, but this fellow I've never heard of.
 {¶ 37} "THE COURT: Wait a second. We'll listen to Mr. Becker's response.
 {¶ 38} "* * *
 {¶ 39} "MR. BECKER: He was on the original witness list that I provided on October 12th, 2004, with the other witnesses. I mean I can't help it he didn't testify before, but I provided discovery. He has all the old discovery.
 {¶ 40} "THE COURT: This witness was on the original discovery list which was resubmitted as part of this case? *Page 11 
 {¶ 41} "MR. PARTLOW: It wasn't resubmitted as part of this case.
 {¶ 42} "THE COURT: Well you had it though?
 {¶ 43} "MR. BECKER: It was part of the file.
 {¶ 44} "THE COURT: You had this as part of the file; correct?
 {¶ 45} "MR. PARTLOW: Yeah. I was told that the witnesses and the exhibits would be the same.
 {¶ 46} "THE COURT: And my understanding is you looked at the transcript, you saw that this witness did not testify?
 {¶ 47} "MR. PARTLOW: Right.
 {¶ 48} "THE COURT: The State had him on the witness list the first time. Obviously didn't have him testify. They wish to have him testify this time. You're issuing your objection?
 {¶ 49} "MR. PARTLOW: Yes.
 {¶ 50} "THE COURT: I'm going to overrule it and allow him to testify."
 {¶ 51} Smith claims the prosecutor's actions violated Crim. R. 16(B)(1)(e), because the state called a witness whose name was not given to the defense.
 {¶ 52} Prior to the first trial, the state filed its answer to Smith's discovery request. Therein, the state asserts that it provided its witness list to defense counsel. After the matter was remanded, Attorney Partlow filed his discovery request. As gleaned from the above colloquy, the assistant prosecutor told Attorney Partlow that the witnesses would be the same. Apparently, the assistant prosecutor meant the witnesses would be the same as the initial witness list, while Attorney Partlow believed *Page 12 
the witnesses would be the same witnesses who actually testified at the first trial. Thus, there was a misunderstanding between counsel on this issue.
 {¶ 53} Smith cites the following language from State v. Scudder, wherein the Supreme Court of Ohio held:
 {¶ 54} "[W]here a prosecutor violates Crim. R. 16 by failing to provide the name of a witness, a trial court does not abuse its discretion in allowing the witness to testify where the record fails to disclose (1) a willful violation of the rule, (2) that foreknowledge would have benefited the accused in the preparation of his or her defense, or (3) that the accused was unfairly prejudiced." State v. Scudder (1994),71 Ohio St.3d 263, 269. (Citations omitted.)
 {¶ 55} We have previously concluded that the record demonstrates that the failure to provide Sergeant Meloro's name to Attorney Partlow was the result of a misunderstanding. Thus, to the extent any of the actions of the prosecutor could be considered a violation of Crim. R. 16, such violation was not "willful." Regarding the second and third prongs, as noted by the state in its brief, Sergeant Meloro testified at the suppression hearing and was cross-examined by Attorney Partlow. In addition, Attorney Partlow acknowledged that Sergeant Meloro's name was on the initial witness list provided by the state. Accordingly, the record does not demonstrate that any alleged violation of Crim. R. 16 by the state precluded Smith from adequately preparing his defense or prejudiced him in any other way.
 {¶ 56} The trial court did not abuse its discretion in permitting Sergeant Meloro to testify.
 {¶ 57} Smith's second assignment of error is without merit. *Page 13 
 {¶ 58} Smith's third assignment of error is:
 {¶ 59} "The trial court abused its discretion by overruling appellant's motion for a mistrial, in violation of appellant's rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution."
 {¶ 60} On direct examination of Sergeant Meloro, the following colloquy occurred:
 {¶ 61} "Q. * * * Did either [Smith or his accomplice] agree to give any statement to the Liberty Police?
 {¶ 62} "A. No.
 {¶ 63} "Q. They invoked their right to counsel?
 {¶ 64} "A. Absolutely.
 {¶ 65} "MR. PARTLOW [defense counsel]: Objection.
 {¶ 66} "THE COURT: Sustained. Please disregard that last question and answer."
 {¶ 67} Thereafter, Mr. Partlow requested a side bar conference, where the following colloquy occurred:
 {¶ 68} "MR. PARTLOW: Your honor, I'd like to make a motion for a mistrial. I've already moved to have this witness excluded which the Court denied, and I understand that. But now we've got, you know, basically a surprise witness taking the stand talking about what the defendant did or did not say in violation of his right to silence.
 {¶ 69} "THE COURT: No. *Page 14 
 {¶ 70} "MR. BECKER: I'm entitled to ask him if he invoked his right. He did invoke his right. I'm not using that to convict him. I'm allowed to ask him whether he was given the opportunity —
 {¶ 71} "THE COURT: You've made your objection which I sustained and I ordered the jury to disregard that. As for your motion for mistrial, it's overruled. Let's proceed."
 {¶ 72} It is error for a police officer to testify about a defendant's post-arrest silence. State v. Treesh (Oct. 16, 1998), 11th Dist. No. 95-L-057, 1998 Ohio App. LEXIS 4886, at *102-103, quoting State v.Rowe (1993), 92 Ohio App.3d 652, 670.
 {¶ 73} In this matter, the trial court immediately sustained Smith's objection to Sergeant Meloro's testimony. In addition, the trial court issued a curative instruction to the jury to disregard the comment. The Supreme Court of Ohio has noted that "[t]he jury is presumed to have followed the court's instructions." State v. Jones (2001),91 Ohio St.3d 335, 344, citing State v. Raglin (1998), 83 Ohio St.3d 253, 264.
 {¶ 74} In addition to sustaining his objection, Smith argues that the trial court should have granted his motion for a mistrial.
 {¶ 75} "`(T)he trial judge is in the best position to determine whether the situation in (the) courtroom warrants the declaration of a mistrial.'" State v. Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190, at ¶ 92. (Citations omitted.) As such, a trial court's decision on whether to grant or deny a motion for a mistrial lies within its discretion.State v. Hale, 119 Ohio St.3d 118, 2008-Ohio-3426, at ¶ 192, citingState v. Sage (1987), 31 Ohio St.3d 173, 182. Further, a reviewing court will not second-guess a trial court's decision unless there is an abuse of discretion. State v. Ahmed, at ¶ 92. *Page 15 
 {¶ 76} The Supreme Court of Ohio has held that "[m]istrials are necessary `only when the ends of justice so require and a fair trial is no longer possible.'" State v. Brinkley, 105 Ohio St.3d 231,2005-Ohio-1507, at ¶ 105, quoting State v. Garner (1995),74 Ohio St.3d 49, 59.
 {¶ 77} Smith cites State v. Leach, 102 Ohio St.3d 135, 2004-Ohio-2147, for the proposition that the admission of evidence of the defendant's silence is prejudicial and necessitates a new trial. Id. at ¶ 38. However, we note the Supreme Court of Ohio specifically commented that the evidence of guilt in that case "was not overwhelming." Id.
 {¶ 78} In this matter, two eye witnesses identified Smith as the person who robbed the BP station. Also, the jury saw video evidence of the robbery. In addition, Smith was in the area of the BP station shortly before the robbery, and Officer DeAngelo believed he was intoxicated at that time. Smith was seen diving into a car minutes after the robbery only 100 yards away. Then, after a car chase, Smith was apprehended with a gun and the precise amount of money that was stolen from the BP station. Thus, unlike the facts of State v. Leach, the evidence of Smith's guilt was substantial.
 {¶ 79} The trial court did not abuse its discretion when it denied Smith's motion for a mistrial.
 {¶ 80} Smith's third assignment of error is without merit.
 {¶ 81} Smith's fourth assignment of error is:
 {¶ 82} "The trial court erred by failing to instruct the jury on the lesser included offense of theft, thereby denying appellant of his fundamental right to a fair trial." *Page 16 
 {¶ 83} Smith claims the trial court erred by failing to give his requested instruction on the lesser-included offense of theft.
 {¶ 84} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Deem (1988),40 Ohio St.3d 205, paragraph three of the syllabus.
 {¶ 85} Smith was charged with aggravated robbery, in violation of R.C. 2911.01(A)(1), which provides:
 {¶ 86} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 87} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"
 {¶ 88} Smith requested an instruction on theft, in violation of R.C. 2913.02(A)(1), which provides:
 {¶ 89} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 90} "(1) Without the consent of the owner or person authorized to give consent[.]" *Page 17 
 {¶ 91} The Supreme Court of Ohio has recently held that theft is a lesser-included offense of robbery. State v. Smith, 117 Ohio St.3d 447,2008-Ohio-1260, paragraph two of the syllabus. In applying the second prong of the Deem test, the majority opinion in State v. Smith noted that Ohio's robbery statute contains an element that is subject to proof by alternative methods. Id. at ¶ 22. That is, one of the elements of robbery is that the offender commits or attempts to commit a theft offense. Id. at ¶ 12 22, citing R.C. 2911.02. The majority noted that the Supreme Court of Ohio had previously held that theft is not a lesser-included offense to aggravated robbery. Id. at ¶ 24, citingState v. Carter (2000), 89 Ohio St.3d 593. However, the majority did not expressly overrule the decision in State v. Carter. The majority opinion clarified the Deem test as follows:
 {¶ 92} "In determining whether an offense is a lesser included offense of another when a statute sets forth mutually exclusive ways of committing the greater offense, a court is required to apply the second part of the test established in State v. Deem (1988), 40 Ohio St.3d 205,533 N.E.2d 294, paragraph three of the syllabus, to each alternative method of committing the greater offense." State v. Smith,117 Ohio St.3d 447, 2008-Ohio-1260, paragraph one of the syllabus.
 {¶ 93} In his dissenting opinion, Justice Pfeifer specifically asks if the majority overrules State v. Carter. Id. at ¶ 35. (Pfeifer, J., dissenting.) However, Justice Pfeifer then answers his own question in the negative and states "the law in Ohio now says that theft is a lesser included offense of robbery but that theft is not a lesser included offense of aggravated robbery. Welcome to Wonderland." Id. (Emphasis sic.) Despite the concerns raised in Justice Pfeifer's dissenting opinion, the majority did not take the *Page 18 
opportunity to specifically state whether it intended to overrule theState v. Carter decision.
 {¶ 94} We believe we are bound to apply the new test set forth inState v. Smith to the analysis of whether theft is a lesser-included offense of aggravated robbery, irrespective of the Supreme Court's prior decision in State v. Carter. This is because the Carter decision was decided prior to the Supreme Court of Ohio's clarification of theDeem test in State v. Smith.
 {¶ 95} Aggravated robbery may be committed when an offender engages in prescribed conduct while committing a theft offense or attempting to commit a theft offense. R.C. 2911.01. Thus, the aggravated robbery statute contains an element that may be proved alternatively. We are required to apply the second prong of the Deem test "to each alternative method of committing the greater offense." State v. Smith,117 Ohio St.3d 447, 2008-Ohio-1260, at ¶ 28. We adopt the following analysis of the Supreme Court of Ohio in State v. Smith, only that we modify it to also apply to aggravated robbery:
 {¶ 96} "If these two alternatives are essentially treated as separate offenses, then fifth-degree felony theft is a lesser included offense of [aggravated] robbery as statutorily defined in the alternative of [aggravated] robbery by theft, because it would be impossible to ever commit [an aggravated] robbery by theft without also committing a theft.
 {¶ 97} "Accordingly, theft, as defined in R.C. 2913.02, is a lesser included offense of [aggravated] robbery, as defined in [R.C. 2911.01]."State v. Smith, 117 Ohio St.3d 447, 2008-Ohio-1260, at ¶ 28-29. *Page 19 
 {¶ 98} In conclusion, we believe that the State v. Smith decision implicitly overruled the decision in State v. Carter.
 {¶ 99} Next, we will address whether the trial court erred by failing to give the requested instruction on theft in this matter.
 {¶ 100} A jury instruction on a "`lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense.'" State v. Monroe, 105 Ohio St.3d 384, 2005-Ohio-2282, at ¶ 37, quoting State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus. If this test is not met, the instruction on the lesser-included offense is not required. Id., citing State v.Kidder (1987), 32 Ohio St.3d 279, 282-283.
 {¶ 101} We note that if the state proved Smith possessed a gun and used, brandished, or displayed that gun while committing the theft offense or while fleeing the theft offense, he committed the offense of aggravated robbery.
 {¶ 102} In this matter, Alicea testified that Smith pointed a gun at her when he stole the money from the BP station. In addition, minutes after the incident, while attempting to flee the scene, Smith was seen with a gun in his hand by Officer DeAngelo. Finally, when Smith was apprehended, Officer Schuster testified there was a nine millimeter gun on the ground about two feet from Smith. Also, Officer Schuster testified there was $115 in Smith's back pocket.
 {¶ 103} In order for the jury to convict Smith of theft instead of aggravated robbery, the trier of fact would have to believe Alicea's testimony that Smith stole money from the BP station, but disbelieve her testimony regarding the gun. Further, it would have to *Page 20 
believe the evidence that Smith was found with money on his person, but disbelieve the testimony of the officers that he had a gun when he was fleeing the scene and when he was ultimately apprehended.
 {¶ 104} In his first trial, Smith testified that he was in the BP station on the night in question, but that he could not have had a gun, because he did not own a gun. Unlike the first trial, Smith did not testify in this trial. Thus, in this trial, there was no testimony or other suggestion that the theft was committed, but that Smith did not have a gun at the time of the theft.
 {¶ 105} In this matter, the evidence presented at trial would not reasonably support both an acquittal on the charged offense of aggravated robbery and a conviction on the lesser-included offense of theft.
 {¶ 106} The trial court did not err by failing to instruct the jury on the lesser-included offense of theft.
 {¶ 107} Smith's fourth assignment of error is without merit.
 {¶ 108} Smith's fifth assignment of error is:
 {¶ 109} "The appellant's convictions are against the manifest weight of the evidence."
 {¶ 110} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 111} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial *Page 21 
ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997),78 Ohio St.3d 380, 387. (Citations omitted.)
 {¶ 112} Again, we note there was substantial evidence to support Smith's convictions. There was evidence that Smith and Johnson were in the vicinity of the BP station shortly before the robbery, and that Smith was intoxicated at that time. Learn and Alicea both identified Smith as the robber within an hour of the incident and again in court. There was video evidence that corroborated their testimony. Smith was seen diving into a car moments after the robbery, only 100 yards from the BP station. When Officer DeAngelo attempted to stop the vehicle, the vehicle eluded him and led several officers on a car chase. After the car crashed, Smith was seen leaving the car and fleeing on foot. When Smith was arrested in a nearby lawn, he had a gun near his person and had $115, the exact amount of money stolen from the BP station, in his back pocket.
 {¶ 113} Smith points to several inconsistencies between Alicea's testimony in the first trial and her testimony in the second trial. In addition, he again challenges Alicea's identification of himself and of the gun. We believe these issues all went to Alicea's credibility. The weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Also, in assessing the witnesses' credibility, the jury, as the trier-of-fact, had the opportunity to observe the witnesses' demeanor, body language, and voice inflections. State v. Miller (Sept. 2, 1993), 8th Dist. No. 63431, *Page 22 
1993 Ohio App. LEXIS 4240, at *5-6. Thus, the jury was "clearly in a much better position to evaluate the credibility of witnesses than [this] court." Id.
 {¶ 114} Upon reviewing the inconsistencies in Alicea's testimony noted by Smith, we do not believe they were so egregious as to render her entire testimony incredible as a matter of law. Instead, we defer to the jury's resolution of Alicea's testimony, and its interpretation of that testimony when viewed with the remainder of the evidence presented by the state.
 {¶ 115} The jury did not lose its way or create a manifest miscarriage of justice by finding Smith guilty of aggravated robbery with the repeat violent offender and gun specifications and of having a weapon while under disability.
 {¶ 116} Smith's fifth assignment of error is without merit.
 {¶ 117} The judgment of the trial court is affirmed.
CYNTHIA WESTCOTT RICE, J., concurs, COLLEEN MARY O'TOOLE, J., concurs in judgment only. *Page 1