SEAN C. GALLAGHER, J.:
*1241 {¶ 1} The state appeals the suppression of a show-up identification, colloquially referred to as a "cold stand" identification, under Juv.R. 22(F). We reverse.
{¶ 2} The victim made plans with another individual to purchase marijuana. While they were parked in a driveway waiting for the seller, two teenagers wearing hooded sweatshirts attacked and robbed the pair. The victim was in the front, passenger side of the car. An unidentified teenager, the one who approached the driver side of the vehicle, was wearing a black hooded sweatshirt and had "poofy" hair sticking out from underneath the donned hood. T.W. was described as wearing a gray hooded sweatshirt, but also had "poofy" hair sticking out from under the hood. Although the other individual was also attacked in the robbery, our focus is on the victim and his identification of T.W. The other individual was unable to identify either assailant.
{¶ 3} During the robbery, T.W. approached the victim and demanded his property. The victim's wallet and cash were stolen; however, the victim fought the assailant over a cell phone. The assailant struck the victim in the face with a gun and then punched him two more times, causing serious injury. Although it was dark out, the victim was able to see the assailant's face, relative age, race, gender, hairstyle, and color of clothing. The assailant was within an arm's length of the victim. After the victim refused to turn over his phone, the assailants both fled. The victim watched the assailants cut through the yard of a house on the same street.
{¶ 4} The police were immediately called and were provided the description of both assailants. Within minutes of receiving the call, a police officer drove to the relative location of the fleeing attackers. That officer observed two teenagers fitting the descriptions in front of a nearby house with several other people. The officer noted there was no other activity in the area, but the house was in the same direction as the fleeing assailants ran. The officer watched the teenager with the black sweatshirt enter the house and exit wearing a white T-shirt. The teenager with the gray, hooded sweatshirt remained outside. After backup arrived, both teenagers were detained.
{¶ 5} Less than a half hour after the crime, the victim was brought to the area where the teenagers were detained for a show-up identification. The victim remained in the back of the squad car while the suspects were separately shown from a distance. The victim identified T.W. as one of the assailants but was unable to identify the other, and that teenager was immediately released. There was some hesitation on the victim's part, but he explained at the suppression hearing that he was concerned about the consequences of identifying the wrong person. The actual dialogue from the body-camera footage is as follows:
Officer: "[Victim] is this the guy?"
Victim: "I'm pretty sure uh I don't, [sigh] I don't want to-?"
Officer (interrupting): "Hey-?"
Victim: "It's the grey hoodie and poofy hair that sticks out with me. I don't [sigh]-I hate to-"
Officer (interrupting): "Hey, look-"
Victim: "It's-if I would have to say, for, yeah-the gray hoodie and the hair was sticking out in front."
T.W. was arrested based on the victim's show-up identification. At the suppression hearing, the victim claimed to be 95 percent certain that T.W. was the person who attacked him.
{¶ 6} In reviewing the admissibility of out-of-court identifications, courts use a two-prong test.
*1242 State v. Davis , 8th Dist. Cuyahoga No. 101502, 2015-Ohio-1144, 2015 WL 1376580, ¶ 19. "First, there must be a determination that the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." Id. , citing State v. Monford , 190 Ohio App.3d 35, 2010-Ohio-4732, 940 N.E.2d 634, ¶ 38 (10th Dist.), and Neil v. Biggers , 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
{¶ 7} If the defendant demonstrates that the identification procedure was unduly suggestive, then it must be determined whether the witness was unreliable under the totality of the circumstances. Id. at ¶ 21. The factors that must be considered are (1) the witness's opportunity to view the offender; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the suspect; (4) the witness's level of certainty when identifying the suspect; and (5) the length of time between the crime and the confrontation. Id. , citing Biggers. "The focus is therefore upon the reliability of the identification and not the identification procedures themselves." Id. at ¶ 18, citing State v. Smith , 8th Dist. Cuyahoga No. 94545, 2011-Ohio-924, 2011 WL 743077, ¶ 18. No one factor is dispositive.
{¶ 8} We must be mindful that returning a suspect or witness to the vicinity of the crime for immediate identification " 'fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh.' " State v. Madison , 64 Ohio St.2d 322, 332, 415 N.E.2d 272 (1980), quoting Bates v. United States , 405 F.2d 1104, 1106 (D.C.Cir.1968). Nevertheless, the state conceded that the sole focus in this case is upon the witness's reliability, or the second prong of the inquiry. The state did not contest T.W.'s claim that the identification procedure was unduly suggestive.
{¶ 9} Of the five Biggers factors, the trial court concluded that three weighed in favor of suppressing the show-up identification: the certainty of the victim's identification, the length of time the victim interacted with the assailant, and the witness's degree of attention at the time of the crime. The trial court concluded that the remaining two factors tended to demonstrate the reliability of the identification: the identification was near in time to the crime, and the victim's prior description of the assailant was accurate. In light of the totality of the circumstances and its consideration of the Biggers factors, the trial court concluded that the show-up identification was unreliable.
{¶ 10} Appellate review of a motion to suppress involves mixed questions of law and fact. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." State v. Burnside , 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8, citing State v. Mills , 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). The trial court's findings of fact must be accepted only if supported by competent, credible evidence. Id., citing State v. Fanning , 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). "After accepting these facts as true, the appellate court then independently determines, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." Id. , citing State v. McNamara , 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).
{¶ 11} As to the "length of time" factor, the trial court found that the victim did not have an extensive opportunity to view the assailant and that the generic description of the assailant's relative race, *1243 age, gender, clothing, and hairstyle did not "lend towards reliability of the identification." Although we accept the trial court's finding of fact, those conclusions are not based on the correct legal standard. A witness is not required to have an extended period of time to view the suspect in order for the identification to be deemed reliable; the witness just needs an opportunity. Mere seconds can be enough time. State v. Walker , 10th Dist. Franklin No. 02AP-679, 2003-Ohio-986, 2003 WL 757525, ¶ 17 (assailant was not wearing a mask, and part of his hair was visible so that the two or three seconds in which the victim observed the assailant demonstrated the reliability of the identification); United States v. Wong , 40 F.3d 1347, 1360 (2d Cir.1994) (looking at offender's face for two to three seconds was sufficient for identification to be deemed reliable).
{¶ 12} In this case, although the assault was brief and in a dimly lit area, the victim was able to identify the assailants' race, gender, relative age, attire (down to the color), and hairstyle. Although generic, the identification was accurate and allowed responding officers to identify two suspects fitting the description in the area of the assailants' flight. The law does not require an extended period of time to view a suspect; the focus is on what the witness is able to perceive within the time available. Id. The trial court's determination that an extensive period of time is necessary to demonstrate reliability is contrary to the law, and the trial court's own conclusion that the initial description of the assailant was accurate-the victim did not need extensive time to observe and note identifying factors in this case that allowed police officers to detain suspects fitting the earlier description.
{¶ 13} Further, the trial court concluded that although the victim was attentive during the robbery, a generic description of the assailant's race, age, gender, attire, and hairstyle did not lend itself toward reliability. Courts have concluded otherwise and have deemed such a description sufficient to demonstrate the reliability of the identification for the purposes of admissibility. State v. McRae , 8th Dist. Cuyahoga No. 96253, 2011-Ohio-6157, 2011 WL 5998202, ¶ 14 (defendant apprehended near where the witness claimed the assailant had fled and wearing clothing matching the description demonstrated reliability of the witness's identification); Walker at ¶ 17 (witness's pre-identification description of the assailant's race, size, hair, hat, and clothing demonstrated reliability); State v. Smith , 11th Dist. Trumbull No. 2008-T-0023, 2008-Ohio-6998, 2008 WL 5429204, ¶ 29 (witnesses' identification based on a particular hat increased the reliability of the identifications). The trial court did not provide any finding of fact to support the conclusion that the accurate, but generic, description of the assailant in this case detracted from the reliability of the identification. Instead, the trial court erroneously concluded that the generic description was in and of itself unreliable, which is contrary to the weight of authority.
{¶ 14} And finally as it relates to the certainty of the victim's identification, the inquiry at this stage of the proceeding is limited to weighing the reliability of the identification against what has been deemed an inherently suggestive identification procedure. Biggers , 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401. On this point, the trial court concluded that the police officer's interruptions of the victim during the identification detracted from the certainty of the witness's identification and that the witness's explanation for why he hesitated in identifying T.W. was incredible by "what is so clearly shown during the actual identification." The first conclusion, however, impermissibly combines considerations *1244 relating to the suggestive nature of the identification with the witness's reliability factors under Biggers , and the second provides no factual basis to support the stated reason.
{¶ 15} The trial court considered factors that are to be considered in determining whether the procedure is unduly suggestive as weighing on the reliability of the witness. The manner in which the police officers conduct the show-up identification impacts the suggestiveness of the identification procedure, the first prong of analysis. When determining whether the procedure is unduly suggestive, the focus is on the police officer's conduct and procedure. Id. Factors used to review the procedure include the officer's statements to the witness before and during the identification. See, e.g., United States v. Arthur , 764 F.3d 92, 100 (1st Cir.2014) (in assessing whether the identification procedure was unduly suggestive, the court considered the officer's statements to the witness). Those factors are separate from those that support the witness's reliability, which is the second prong of the inquiry. State v. Jells , 53 Ohio St.3d 22, 27, 559 N.E.2d 464 (1990), citing State v. Lott , 51 Ohio St.3d 160, 175, 555 N.E.2d 293, 308 (1990) ; Manson v. Brathwaite , 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
{¶ 16} The second prong of the analysis is based on the reliability of the witness's identification independent of the police conduct and procedure. The purpose of the reliability inquiry is to determine whether the unduly suggestive nature of the identification was overcome by the reliability of the witness. Courts cannot bootstrap the suggestiveness inquiry, the first prong of the test, into the witness's reliability. See, e.g., State v. Williams , 10th Dist. Franklin Nos. 02AP-730 and 02AP-731, 2003-Ohio-5204, 2003 WL 22232921, ¶ 44 (the officers' statements were immaterial because the witness's identification was reliable); Williams v. Ercole , S.D.N.Y. No. 06 Civ. 0044, 2007 WL 1052446, *6 (Apr. 6, 2007) (officer's statements do raise issues with the independence of reliability of the show-up identification). Each prong of the inquiry is separate from the other. Davis , 8th Dist. Cuyahoga No. 101502, 2015-Ohio-1144, 2015 WL 1376580, at ¶ 22, citing State v. Green , 117 Ohio App.3d 644, 653, 691 N.E.2d 316 (1st Dist.1996). This is not to say that the statements are irrelevant. We are merely recognizing that the question of whether the police officer's statements made during the identification cast doubt on the accuracy of the identification, is one to be answered only by the trier of fact. United States v. Martinez , 462 F.3d 903, 911 (8th Cir.2006).
{¶ 17} With respect to the victim's certainty irrespective of the unduly suggestive procedure, the trial court did not provide any findings of fact to support the conclusion that the victim's explanation for his hesitation in identifying T.W. and his certainty of that identification were incredible. Instead, the trial court indicated that the victim's credibility was lacking by what was "so clearly shown during the actual identification."
{¶ 18} Upon review of the record, nothing inherently suggests that the victim did anything but identify T.W. solely based on his matching the description of the assailant's relative age, race, gender, hairstyle, and clothing. There is nothing in the footage that "clearly" demonstrates the victim to be incredible or having any uncertainty other than candidly admitting his identification was based on the generic description he provided police officers before the show-up identification took place. As already mentioned, courts have determined that such identifications are admissible, and therefore, a generic description of a suspect in and of itself is not a basis to *1245 deem the identification unreliable for the purposes of suppression. See, e.g., McRae , 8th Dist. Cuyahoga No. 96253, 2011-Ohio-6157, 2011 WL 5998202, at ¶ 14 ; Walker , 10th Dist. Franklin No. 02AP-679, 2003-Ohio-986, 2003 WL 757525, at ¶ 17 ; Smith , 11th Dist. Trumbull No. 2008-T-0023, 2008-Ohio-6998, 2008 WL 5429204, at ¶ 29 ; State v. Broomfield , 10th Dist. Franklin No. 96APA04-481, 1996 WL 631211, *3-4 (Oct. 31, 1996) (vague description of three suspects, indicating race and attire, demonstrated reliability of identification after police apprehended suspects in vicinity of the crime).
{¶ 19} Whether that identification is sufficient to prove the state's case is another matter altogether, but that is an issue left for the trier of fact after reviewing all the evidence. If the pretrial identification was not unnecessarily suggestive or not unreliable based on the totality of the circumstances, " 'any remaining questions as to reliability go to the weight of the identification, not its admissibility, and the identification is admissible.' " Davis , 8th Dist. Cuyahoga No. 101502, 2015-Ohio-1144, 2015 WL 1376580, at ¶ 22, citing State v. Fields , 8th Dist. Cuyahoga No. 99750, 2014-Ohio-301, 2014 WL 346723, and State v. Wills , 120 Ohio App.3d 320, 324, 697 N.E.2d 1072 (8th Dist.1997).
{¶ 20} In light of the errors in law, the suppressing of the show-up identification must be reversed. Based on the applicable law as applied to the trial court's findings of fact, the victim's identification was reliable despite the state's concession that the procedure was unduly suggestive. We reverse and remand for further proceedings.
TIM McCORMACK, P.J., CONCURS;
ANITA LASTER MAYS, J., DISSENTS WITH SEPARATE DISSENTING OPINION