[Cite as *State v. Hall*, 2025-Ohio-644.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                         :

    Plaintiff-Appellee,         :

                                       No. 113840

    v.                               :

AARON HALL,                           :

    Defendant-Appellant.       :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 27, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-687238-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christopher Woodworth, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Rick L. Ferrara, Assistant Public Defender, *for appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1} Aaron Hall appeals his conviction following a jury trial for felonious assault, tampering with evidence, and having a weapon while under a disability. For the following reasons, we affirm.

{¶ 2} In August 2023, East Cleveland Police responded to a Shot Spotter alert in an area bordered by Euclid Avenue, Superior Avenue, Forest Hills Blvd., and Terrace Road. East Cleveland Police Officers Kenron Drake, Ethan Schilling, and Daylan Smith, responded but, being understaffed, called for assistance from nearby jurisdictions. Officer Smith, upon arriving, heard gunshots and saw three people running. While securing the area and advancing toward the sound of more gunfire, Smith encountered a shirtless, tattooed, black male holding a firearm. He later identified the suspect as Hall during trial. When Officer Smith ordered Hall to raise his hands, Hall immediately fired two shots at him. Smith discharged three shots in response, and the suspect fled. Smith broadcasted a generic description of the shooter over his radio.

{¶ 3} Less than a minute later, Officer Drake saw a man fitting the broadcasted description in the direction Hall fled. Officer Drake observed him tossing something near a wooded area. Drake detained Hall and treated a gunshot wound to Hall's hand. Drake did not search for the discarded item, but a 9 mm Ruger semiautomatic handgun was recovered by other officers investigating in the aftermath in the area Drake saw Hall toss something away.

{¶ 4} Investigating officers collected evidence pertaining to the officer-involved shooting, including the Ruger handgun, shell casings, and DNA on the firearm. Three shell casings, recovered from the northwest corner of 1884 Forest Hills Boulevard, were determined to have been ejected from Officer Smith's service weapon. Additionally, officers recovered two bullets impacting the ground near

where the suspect was standing. Those bullets were also consistent with the rounds fired from Officer Smith's weapon.

{¶ 5} The handgun recovered from the wooded area was a Ruger Security-9, a 9 mm, semiautomatic handgun. Blood was found on the grip and base of the magazine. Ballistic testing indicated that the markings on the shell casings recovered near the impact area of the rounds fired from Officer Smith's service weapon were consistent with the Ruger Security-9, demonstrating the Ruger 9 mm was used by the person firing at Officer Smith. DNA analysis later identified the blood on the firearm as belonging to Hall.

{¶ 6} No gunshot residue test was performed on Hall, but at trial, Officer Smith identified him as the shirtless, tattooed man who had fired the shots. During recross-examination, the final question in fact, when the defense counsel questioned Officer Smith as to whether he provided a detailed description of Hall before trial, Officer Smith stated that he had seen Hall's booking photograph at some point in time. That line of testimony was not further explored. Hall's defense counsel used that statement for impeachment purposes throughout the remainder of the trial as a means to call into question the in-court identification.

{¶ 7} A jury convicted Hall of felonious assault, tampering with evidence, and having weapons under a disability, along with attendant firearm specifications. Hall was sentenced to a twelve-to-fourteen-year term of imprisonment as a result, eight years of which are mandatory on the two required sentences for firearm

specifications attendant to the felonious-assault and tampering-with-evidence counts.

{¶ 8} In this appeal, Hall asserts three assignments of error. In the first two, he claims that the trial court committed plain error by failing to declare a mistrial, to exclude evidence, or to provide a jury instruction on Officer Smith's identification procedure that Hall failed to object to during trial, or in the alternative, his trial counsel rendered ineffective assistance by failing to timely object to the in-court identification. In the third assignment of error, Hall claims that his conviction is against the weight of the evidence. None of the arguments has merit. It is noted, however, that all of the arguments presented solely pertain to the felonious assault conviction. Hall does not assign any errors with respect to tampering with evidence or having weapons under a disability, which are not impacted by Officer Smith's identification of Hall as the shooter.

{¶ 9} With respect to Hall's first argument, the crux of it focuses on the trial court's purported failure to provide what is commonly referred to as a *Telfaire* jury instruction. The *Telfaire* instruction is used in some situations in which pretrial identifications are introduced at trial. It instructs the jury to consider "the capacity and opportunity of the witness to observe the defendant"; whether the identification is "the product of the witness's own recollection, given the strength of the identification and the circumstances under which it was made; the inconsistent identifications that may have been made by the witness; and the general credibility of the witness." *State v. Witherspoon*, 2011-Ohio-704, ¶ 23 (8th Dist.), quoting *State*

*v. Guster*, 66 Ohio St.2d 266, 268, fn. 1 (1981), and *United States v. Telfaire*, 469 F.2d 552, 558-559 (C.A.D.C. 1972). Largely ignored is the fact that Hall failed to ask for any jury instruction relating to pretrial identifications. This likely was because a pretrial identification was not an issue throughout the vast majority of Officer Smith's testimony.

{¶ 10} Officer Smith identified Hall at trial with certainty. It was only during the last exchange during the re-cross examination that defense counsel elicited a response indicating that Officer Smith had seen Hall's booking photograph at an unspecified time. Citing *State v. Dale*, 445 N.E.2d 1137, 1140 (10th Dist.1982), Hall claims in this appeal that the trial court was required to sua sponte intervene and instruct the jury on the failure to properly administer a photo array. Importantly, *Dale* does not stand for such a proposition. In *Dale,* the trial court overruled a jury-instruction request, and the panel found that decision to be in error. *Id.* Contrary to the main focus of Hall's argument, a trial court is generally under no obligation to sua sponte issue jury or limiting instructions. *See, e.g., State v. Echols*, 2024-Ohio-5088, ¶ 47. An objection or request for a jury instruction is required.

{¶ 11} This impacts the standard of review. "When [trial] counsel fails to request a limiting instruction or object to the court's jury instructions," appellate review is limited to plain error. *Id.*

{¶ 12} "If the defendant failed to raise an error affecting substantial rights at trial, an appellate court reviews the error under the plain error standard in Crim.R. 52(B)." *State v. Perry*, 2004-Ohio-297, ¶ 14. Crim.R. 52 affords appellate courts

"limited power" to correct plain errors that occurred during the trial court proceeding. *See Perry* at ¶ 9. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Under the plain-error standard, "the defendant bears the burden of 'showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice.'" *State v. West*, 2022-Ohio-1556, ¶ 22, quoting *State v. Quarterman*, 2014-Ohio-4034, ¶ 16. "A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings." *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982).

{¶ 13} The element of prejudice under the plain-error standard carries over to Hall's other argument regarding the effectiveness of his trial counsel with respect to the *Telfaire* instruction. In order to establish ineffective assistance of counsel, a defendant must show "(1) that counsel's performance was deficient, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's deficient performance prejudiced the defendant, i.e., that there is a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Drain*, 2022-Ohio-3697, ¶ 36, citing *Strickland v. Washington*, 466 U.S. 668, at 687-688. A "reasonable probability" is a probability of a different result sufficient enough to undermine confidence in the outcome, which is the same deferential inquiry as applied under

the plain-error standard of review. *Drain* at ¶ 52, quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004), and *Strickland* at 694.

{¶ 14} Thus, under both of Hall's arguments pertaining to the lack of a *Telfaire* instruction, he is required to demonstrate prejudice, and without such a showing, he is unable to demonstrate plain error requiring the reversal of his conviction. On this point, Hall's argument is limited. He claims the failure to object to the in-court identification or to provide a jury instruction pertaining to a pretrial identification caused prejudice because the case against him was entirely circumstantial without the officer's firsthand identification.

{¶ 15} We can skip a large portion of this argument as presented. Hall's argument with respect to the lack of a jury instruction specifically reciting the *Telfaire* instruction is misplaced. Panels from this court have concluded that general instructions regarding witness credibility tend to bleed into the scope of the *Telfaire* instruction and satisfy the rationale underlying the need for the instruction. *See State v. Jenkins*, 2018-Ohio-2397, ¶ 43-44 (8th Dist.); *State v. Witherspoon*, 2011-Ohio-704, ¶ 22 (8th Dist.); *see also State v. Winters*, 2016-Ohio-928, ¶ 36 (8th Dist.). For example,

> In *Witherspoon*, [the panel] found that while the trial court did not give the *Telfaire* instruction, it instructed the jury to consider "the reasonableness of the testimony, the opportunity the person had to see, or hear or know the truth of the facts and circumstances * * *; and any other facts and circumstances surrounding the testimony, which, * * * would add or detract from the credibility and weight of the testimony.

*Jenkins* at ¶ 44, citing *Witherspoon* at ¶ 25.  Despite the lack of a specific *Telfaire*

instruction, the panel concluded that the general credibility instruction "adequately

informed the jury of its duty to carefully consider the credibility of and surrounding

circumstances affecting the witness's identification[,]" and as a result, the panel

concluded that there was no error in failing to expressly provide the *Telfaire*

instruction.  *Id.,* citing *Witherspoon* at ¶ 26.

{¶ 16} In this case, near the conclusion of trial, the trial court provided

general jury instructions, including one similar to the instruction discussed in

*Witherspoon*:

> [Y]ou are the sole judges of the facts, the credibility of the witnesses and
> the weight of the evidence.  To weigh the evidence you must consider
> the credibility of the witnesses, and you will apply the tests of
> truthfulness which you apply in your daily lives.
>
> These tests include the appearance of each witness upon the stand; the
> manner of testifying; the reasonableness of the testimony; the
> opportunity the witness had to see, hear, and know the things
> concerning which the witness testified; accuracy of memory; frankness,
> or lack of it; intelligent, interest and bias, if any, together with all the
> facts and circumstances surrounding the testimony. Applying these
> tests you will assign to the testimony of each witness such weight as you
> think proper.

(Tr. 476:24-477:17), *see also* (tr. 200:24-201:14).   Importantly, Hall has not

addressed the above-mentioned authority substituting the general credibility

instruction with a specific *Telfaire* one, severely limiting appellate review.  *See*

*Quarterman*, 2014-Ohio-4034, ¶ 19, citing *State v. Bodyke*, 2010-Ohio-2424, ¶ 78,

(O'Donnell, J., concurring in part and dissenting in part); *see also Russo v.*

*Gissinger*, 2023-Ohio-200, ¶ 28 (9th Dist.), quoting *State v. Taylor*, 1999 Ohio App.

LEXIS 397 (9th Dist. Feb. 9, 1999) ("'It is the duty of the appellant, not [an appellate court], to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record.'"). Because the trial court provided an instruction that arguably satisfies the intent of the instruction as identified in *Telfaire*, there can be no error, plain or otherwise, based on Hall's argument that the trial court failed to specifically provide a *Telfaire* instruction.

{¶ 17} In addition to the argument pertaining to the lack of a jury instruction, Hall alludes to potential ineffectiveness of counsel for the failure to object to or to seek to suppress the in-court identification once Officer Smith testified on cross-examination that he had seen Hall's booking photograph at an unspecified time.

{¶ 18} It must be remembered that courts exclude tainted pretrial identification in order to "'protect the defendant from misconduct by the state.'" *State v. Gross*, 2002-Ohio-5524, ¶ 19, quoting *State v. Brown*, 38 Ohio St.3d 305, 310 (1988). "'[W]hen a witness has been confronted with a suspect before trial, due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances.'" *Id.*, quoting *State v. Murphy*, 91 Ohio St.3d 516, 534 (2001), and *State v. Waddy*, 63 Ohio St.3d 424, 438 (1992).

{¶ 19} According to Hall, the generic description provided by Officer Smith, which enabled other officers to immediately apprehend Hall, was insufficient to give

rise to a reliable in-trial identification. On this point, Hall provides no case authority in support of the notion that a generic description of a suspect is insufficient to form the basis of a reliable, in-court identification.

{¶ 20} On the contrary, courts have determined that such identifications are admissible, and therefore, a generic description of a suspect in and of itself is not a basis to deem the identification unreliable for the purposes of suppression. *In re T.W.*, 2017-Ohio-8875, ¶ 18 (8th Dist.), citing *State v. McRae*, 2011-Ohio-6157, ¶ 14 (8th Dist.) (defendant apprehended near where the witness claimed the assailant had fled and wearing clothing matching the description demonstrated reliability of the witness's identification); *In re S.A.*, 2019-Ohio-4782, ¶ 40 (8th Dist.); *State v. Walker*, 2003-Ohio-986, ¶ 17 (10th Dist.) (witness's pre-identification description of the assailant's race, size, hair, hat, and clothing demonstrated reliability); *State v. Smith*, 2008-Ohio-6998, ¶ 29 (11th Dist.); *State v. Broomfield*, 1996 Ohio App. LEXIS 4785, *9 (Oct. 31, 1996) (10th Dist.) (vague description of three suspects, indicating race and attire, demonstrated reliability of identification after police apprehended suspects in the vicinity of the crime).

{¶ 21} In this case, Officer Smith radioed a generic description of Hall to fellow officers enabling them to apprehend Hall within a minute of the shots being fired at Officer Smith. Further, evidence established that Hall was in possession of the firearm that was used in the shooting at that time. That Officer Smith did not provide a more detailed description does not detract from the reliability of the identification.

{¶ 22} As a result of the foregoing, Hall is unable to demonstrate any error with the admissibility of Officer Smith's statement giving rise to ineffective assistance of counsel. Without error, Smith's counsel cannot be deemed to have engaged in a deficient performance. The first two assignments of error are overruled.

{¶ 23} In the final assignment of error, Hall claims his conviction for felonious assault is against the weight of the evidence because of the questions he posed regarding the reliability of Officer Smith's identification.

{¶ 24} When reviewing a claim challenging the weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). When a court of appeals concludes that a verdict is against the weight of the evidence, "the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* "[A]n appellate court's disagreement with the [finder of fact's] weighing of the evidence does not require the special deference accorded verdicts of acquittal." *Id.* at 388. A judgment of conviction should be reversed as against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.* at 387, citing *Martin* at 175.

{¶ 25} This is not the exceptional case. Even removing Officer Smith's identification of Hall from the equation, Hall was detained within one minute of Officer Smith's broadcast of a description of the man who had just fired shots at him. When first encountered by another officer, Hall matched the description and was seen discarding something into a wooded area, which turned out to be the firearm used in the shooting. The handgun recovered also had Hall's blood deposited on the grip, as well as blood on the base of the magazine. It is well-settled that "'a conviction is not against the manifest weight of the evidence simply because the jury rejected the defendant's version of the facts and believed the testimony, [whether direct or circumstantial,] presented by the state.'" *State v. Jallah*, 2015-Ohio-1950, ¶ 71 (8th Dist.), quoting *State v. Hall*, 2014-Ohio-2959, ¶ 28 (4th Dist.). Without more, it cannot be concluded that the jury lost its way and created a manifest miscarriage of justice in this case. The third and final assignment of error is overruled.

{¶ 26} Hall's convictions are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

LISA B. FORBES, P.J., and
DEENA R. CALABRESE, J., CONCUR